700 So.2d 51 (1997)
Eugene FASSI and Ann Marie Fassi, Appellants,
v.
AMERICAN FIRE AND CASUALTY COMPANY, etc., Appellee.
No. 96-3381.
District Court of Appeal of Florida, Fifth District.
September 5, 1997.
Rehearing Denied October 16, 1997.
*52 Charles E. Davis, of Charles E. Davis, P.A., Orlando, for Appellants.
Andrew P. Rock, of Neilson and Associates, Orlando, for Appellee.
HARRIS, Judge.
Eugene and Ann Marie Fassi appeal from a final judgment denying their claim for fire damages. We affirm.
After their home was destroyed by fire (under suspicious circumstances) on December 27, 1988, appellants filed a claim for damages under their homeowners' policy with American Fire and Casualty Company. American immediately responded that because of the suspicious circumstances of the fire, appellants would be required under the terms of the policy to submit to examination under oath and provide a sworn claim of loss. Appellants were instructed to contact certain attorneys so that the examination could be scheduled. Appellants failed to contact the attorneys or to send in the sworn proof of claim. Strike one.
A follow up letter was sent to appellants by American advising them: "We have been informed that you have not yet contacted that law firm [to set a mutually convenient time and place for the examination]. Please proceed to do so upon your receipt of this letter, if you wish to pursue a claim with regard to this fire loss." Appellants failed to do so. Strike two.
The law firm, on behalf of American, then wrote to appellants and scheduled the examination for April 11, 1989. The law firm was advised the day before the scheduled examination that appellants would not comply with the policy's requirement to submit to a sworn examination because of the threat of criminal proceedings. However, as stated in Rollins Burdick Hunter of New York, Inc. v. Euroclassics Limited, Inc., 502 So.2d 959, 962 (Fla. 3d DCA 1987):
A civil litigant's fifth amendment right to avoid self-incrimination may be used as a shield but not as a sword. This means that a plaintiff seeking affirmative relief in a civil action may not invoke the fifth amendment and refuse to comply with the defendant's discovery requests, thereby thwarting the defendant's defenses.
Likewise, the claimant may not seek to recover fire losses under an insurance policy and, at the same time, refuse to comply with policy requirements to answer questions under oath because criminal charges related to the cause of the fire may be contemplated or pending against him. The examination in this case was not cancelled because the attorney wished to give appellants the opportunity to state their fifth amendment position on the record. Instead, appellants merely failed to appear. Strike three.
Even so, appellants were again contacted and advised:
Please understand that you have a duty to cooperate with us in our investigation of your insurance claim. Your failure or refusal to cooperate may be considered a breach of your insurance policy, resulting in a denial of coverage. We need to proceed with this investigation before memories fade, and before our abilities to investigate and analyze this claim are severely prejudiced.
We wish to make a fair and informed decision on your insurance claim by developing the objective facts and circumstances of this matter without further delay. However, without your cooperation, we will be unable to complete our investigation. Thus, we must insist that you cooperate with us in our investigation of this claim.
The examinations were rescheduled for April 27, 1989. Appellants again failed to appear. Strike four.
Finally, American contacted appellants on May 9, 1989, and informed them:

*53 Please explain to us in writing ... why you have not cooperated with us in our investigation of your claim. We will further consider the effect of your failure to cooperate, upon our receipt of that complete written explanation. If we do not receive such an explanation from you, we will have no alternative but to deny your claim, in light of your failure to cooperate.
No written explanation was forthcoming. Strike five.
Some three months later, American was advised by appellants' public adjuster that appellants would now like to participate in the examinations. American responded that now it was too late and that the claim was denied because of the appellants' failure to cooperate. Appellants filed suit on the policy, which led to the summary judgment.
It is appellants' position that since they agreed to cooperate before they were notified that their claim had actually been denied, they were entitled to submit to examination and proceed with their claim. American asserts that appellants were given one last chance to explain why they had refused to cooperate and that a failure to so respond would lead to denial of the claim. Since no explanation was given, American urges that no further notice was required. We agree. American's final letter to appellants did not give appellants another chance to cooperateonly to explain why they had failed to timely cooperate. It is like this court requesting an appellant to explain why his or her brief was not timely filed. It is not an invitation to file an untimely brief.
Appellants were given five opportunities to cooperate as required by the insurance policy. Their offer to do so some three months after being asked to explain why they had not timely cooperated is too little, too late.
AFFIRMED.
W. SHARP, J., concurs.
GRIFFIN, C.J., concurs specially, with opinion.
GRIFFIN, Chief Judge, concurring specially.
I agree that the repeated unexcused failures of appellants to appear for examination under oath is fatal to their claim. See Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300 (Fla. 4th DCA 1995), review denied, 670 So.2d 938 (Fla.1996). A case decided in 1995 in Massachusetts, Mello v. Hingham Mutual Fire Insurance Co., 421 Mass. 333, 656 N.E.2d 1247 (1995), whose facts are similar to this case, also does a good job of explaining why an insured cannot avoid the obligation to submit to examination under oath and must do so in a timely manner as a condition precedent to recovery under the policy.