914 So.2d 1010 (2005)
Melanie PRICE and Joseph Price, Appellant,
v.
RLI INSURANCE COMPANY, Appellee.
No. 5D04-1939.
District Court of Appeal of Florida, Fifth District.
November 4, 2005.
*1011 Ian D. Forsythe, of Hilyard, Bogan & Palmer, P.A., Orlando, for Appellant.
Catherine E. Contento, Robert E. Morris and Robert A. Bauman of Robert E. Morris, P.A., Tampa, for Appellee.
SHARP, W., J.
Melanie and Joseph Price appeal from a final summary judgment, which determined they could not recover under a surety bond issued in favor of First Choice Auto Finance, Inc. The Prices sought to recover damages associated with the wrongful repossession of their vehicle, which they purchased and financed at First Choice. The trial court concluded the Prices were not proper claimants under the bond because their contract had been assigned by First Choice to another company, Florida Finance Group, Inc., and that company had repossessed the vehicle for non-payment under the contract. We agree with the trial court and affirm.
The operative facts in this case are not in dispute. In March 1998, the Prices purchased a used 1992 Chevrolet Lumina from First Choice, a licensed motor vehicle dealer. First Choice financed the purchase and entered into an installment sales contract with the Prices. Under the contract, the Prices borrowed $6,242.49 and were required to make 48 monthly payments of $218.48 beginning April 1, 1998. The contract provided that it could be assigned and First Choice assigned the contract to Florida Finance.
In November 2001, the Lumina was repossessed. In January 2002, the Prices' attorney sent a written demand for its return to Florida Finance. However, the vehicle was not returned.
Melanie then filed suit against both First Choice and Florida Finance for wrongful repossession of the vehicle and other claims. Neither defendant responded to the complaint.[1] In August 2002, a final judgment and entry of default was entered against the defendants for $17,413.09.
The Prices then filed suit against RLI, as surety for First Choice. RLI had issued a surety bond for $25,000 covering First Choice, as principal, pursuant to section 320.27(10).[2] The bond provides that *1012 RLI shall be bound in favor of any person who suffers a loss as the result of the failure of First Choice to "comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle ..."
RLI answered the Prices' complaint and asserted several affirmative defenses, including that it had no liability because the vehicle had not been repossessed by First Choice. RLI also moved for summary judgment arguing that it had no liability because its bond covered only First Choice and the vehicle had been repossessed by Florida Finance. Following a hearing, summary judgment was granted in its favor and this appeal ensued.
On appeal, the Prices first argue there was insufficient evidence for the trial court to have concluded that Florida Finance repossessed their vehicle. This argument is without merit.
In support of its motion for summary judgment, RLI submitted an affidavit from its Commercial Surety Claims Manager. The manager stated the Prices made their monthly payments to Florida Finance, Florida Finance repossessed the vehicle and RLI has not executed a bond in favor of Florida Finance, a company separate and distinct from First Choice. Attached to the affidavit were copies of the Prices' cancelled checks from 2001 showing their payments to Florida Finance, the Certificate of Repossession from the Division of Motor Vehicles and the demand letter from the Prices' counsel to Florida Finance.
The Certificate of Repossession states: "This Certificate of Repossession certifies that the owner/lienholder named in this document has repossessed the above described motor vehicle ..." (emphasis added) The lienholder named in the document is Florida Finance. In his letter to Florida Finance, the Prices' attorney wrote: "As you know, your company took possession of Ms. Price's vehicle on November 2, 2001 on the stated justification that my client was in default of her loan." (emphasis added)
The Prices did not file any affidavits or submit any evidence to support a determination that First Choice had anything to do with repossessing their vehicle. At the summary judgment hearing, the Prices' attorney (the same attorney who wrote the letter) claimed the Prices simply do not know who repossessed their vehicle. However, counsel did not explain why he wrote the letter to Florida Finance if not based on the Prices' representations or the logical conclusion that Florida Finance had repossessed the vehicle since it held the paperwork. The Prices' claim that they do not know who actually repossessed their vehicle is insufficient to create a genuine issue of fact on this issue.
The Prices next argue the final default judgment against First Choice is prima facie evidence that RLI is liable for First Choice's failure to comply with the conditions of the installment sales contract, citing Von Engineering Co. v. R.W. Roberts Const. Co., Inc., 457 So.2d 1080 (Fla. 5th DCA 1984). The Prices contend that RLI has not rebutted that prima facie showing and thus they are entitled to relief.
In Von Engineering, this court explained:

*1013 Principles of indemnity law hold that when a surety has notice of a suit against the principal and is afforded an opportunity to appear and defend, a judgment rendered without fraud or collusion is conclusive against the surety as to all material questions therein determined. (citations omitted). A corollary to this principle is that where it is not made to appear that the surety knew of and had an opportunity to defend the suit, then the judgment is prima facie evidence that the surety is liable, sufficient to support a verdict unless it is rebutted by proof that it was obtained through fraud or collusion or that the loss of liability created by the judgment arose from acts other than those indemnified against under the conditions of the bond. (emphasis added)
457 So.2d at 1081.
The Prices concede there is no evidence to establish that RLI knew about the underlying lawsuit against First Choice prior to the entry of the judgment. In turn, RLI has conceded there is no evidence the judgment was obtained through fraud or collusion. Thus the only issue is whether RLI established the loss of liability created by the judgment arose from "acts other than those indemnified against under the conditions of the bond."
The losses claimed by the Prices  wrongfully repossessing the vehicle, failing to provide notice of the disposition of the vehicle after repossession and failure to provide the Prices with a rebate of the unearned finance charge  all relate to the repossession of the vehicle. However, the repossession of the vehicle was the "act" of Florida Finance, not First Choice. Thus the repossession was not indemnified against under the conditions of the bond which covered only First Choice.
Finally, the Prices contend that First Choice could not relieve itself of liability for breach of the installment sales contract by the simple expedient of assigning the contract to Florida Finance. The Prices argue First Choice could escape liability under the contract only if there had been a complete novation of the contract, which did not occur here. Thus the Prices argue it does not matter whether First Choice or its assignee Florida Finance repossessed the vehicle  in either case, First Choice remains responsible.
Generally, contract rights can be assigned unless they involve obligations of a personal nature, or there is some public policy against the assignment, or an assignment is specifically prohibited by the contract. W.S. Badcock Corp. v. Webb, 699 So.2d 859 (Fla. 5th DCA 1997); New Holland, Inc. v. Trunk, 579 So.2d 215 (Fla. 5th DCA 1991). Here the installment sales contract did not involve obligations of a personal nature, no public policy prohibited the assignment, and the assignment was specifically allowed by the contract.
In Lauren Kyle Holdings, Inc. v. Heath-Peterson Const. Corp., 864 So.2d 55 (Fla. 5th DCA 2003), this court explained the effect of an assignment:
An assignment is a transfer of all the interests and rights to the thing assigned. Dept. of Rev. v. Bank of America, 752 So.2d 637 (Fla. 1st DCA 2000); Rose v. Teitler, 736 So.2d 122 (Fla. 4th DCA 1999). The assignee thereafter stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name. Dove v. McCormick, 698 So.2d 585 (Fla. 5th DCA 1997); State Farm Fire and Cas. Co. v. Ray, 556 So.2d 811 (Fla. 5th DCA 1990). Because an assignment vests in the assignee the right to enforce the contract, an assignor retains no rights *1014 to enforce the contract after it has been assigned. (emphasis added)
864 So.2d at 58.
Once the installment sales contract was assigned from First Choice to Florida Finance, First Choice had no right to enforce the contract for the Prices' failure to make their payments. That interest and right belonged to Florida Finance. To hold otherwise would negate the reason and legal effect of the assignment. Since the contract had been assigned to Florida Finance and Florida Finance repossessed the vehicle, RLI is not liable under the bond which covers only First Choice.
AFFIRMED.
SAWAYA and TORPY, JJ., concur.
NOTES
[1] Apparently First Choice was going out of business at the time.
[2] 320.27. Motor vehicle dealers

* * *
(10) Surety bond or irrevocable letter of credit required.
(a) Annually, before any license shall be issued to a motor vehicle dealer, the applicant-dealer of new or used motor vehicles shall deliver to the department a good and sufficient surety bond or irrevocable letter of credit, executed by the applicant-dealer as principal, in the sum of $25,000.
(b) Surety bonds and irrevocable letters of credit shall be in a form to be approved by the department and shall be conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of chapter 319 and this chapter in the conduct of the business for which the dealer is licensed. Such bonds and letters of credit shall be to the department and in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation of the conditions hereinabove contained. When the department determines that a person has incurred a loss as a result of a violation of chapter 319 or this chapter, it shall notify the person in writing of the existence of the bond or letter of credit. Such bonds and letters of credit shall be for the license period, and a new bond or letter of credit or a proper continuation certificate shall be delivered to the department at the beginning of each license period. However, the aggregate liability of the surety in any one year shall in no event exceed the sum of the bond or, in the case of a letter of credit, the aggregate liability of the issuing bank shall not exceed the sum of the credit.