37 So.3d 329 (2010)
David SHAW, David G. Shaw D.C., P.A., etc., et al., Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY, et al., Appellees.
No. 5D07-3136.
District Court of Appeal of Florida, Fifth District.
May 7, 2010.
*330 Christopher V. Carlyle and Shannon McLin Carlyle, of The Carlyle Appellate Law Firm, The Villages, for Appellant.
Kenneth P. Hazouri of DeBeaubien, Knight, Simmons, Mantzaris & Neal, L.L.P., Orlando, and Betsy E. Gallagher and Amy L. Miles, of Kubicki Draper, P.A., Tampa, for Appellees.

ON MOTION FOR REHEARING EN BANC
GRIFFIN, J.
The court has elected to consider this case en banc. We withdraw the prior panel opinion and substitute the following opinion.
State Farm Fire and Casualty Company ["State Farm"] issued an automobile insurance policy containing an examination under oath ["EUO"] provision to its insured, Renard St. Louis ["St. Louis"]. The policy contains a clause providing that "any person or organization making claim or seeking payment . . . must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require." After St. *331 Louis was involved in a motor vehicle accident, he received medical care from Appellants, David Shaw, David G. Shaw, D.C., P.A., d/b/a Central Florida Chiropractic Center, DC Services, LLC, DC Supply, LLC, and Charles Machler [collectively, "Shaw"]. At the time of treatment, St. Louis assigned his no-fault benefits under the State Farm policy, to the extent of the services provided, to Shaw.[1] When Shaw sought payment from State Farm under the assignments for the services rendered to St. Louis, State Farm demanded that Shaw appear for an EUO. Shaw refused to submit to the EUO and State Farm refused payment. Shaw subsequently filed suit seeking a declaratory judgment that, as assignees of the right to payment, they are not required to attend an EUO. The trial court entered judgment in favor of State Farm. We reverse.
The issue before the court is whether an EUO clause in an automobile insurance policy is binding on an assignee of the right to payment of no-fault benefits. It is undisputed that a provision in an insurance policy that requires the insured to submit to an EUO qualifies as a condition precedent to recovery of policy benefits. See Goldman v. State Farm Fire *332 Gen. Ins. Co., 660 So.2d 300 (Fla. 4th DCA 1995); see also Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513 (Fla. 5th DCA 2007); Fassi v. Amer. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997). The question that arises in this case is whether an insurer can include in the policy a provision that extends the duty to submit to an EUO to assignees of the insured's right to insurance proceeds.
Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty. See Dependable Ins. Co. v. Landers, 421 So.2d 175, 179 (Fla. 5th DCA 1982). Assignment of a right to payment under a contract does not eliminate the duty of compliance with contract conditions, but a third-party assignee is not liable for performance of any duty under a contract, unless he was a party to the agreement or has become a party by subsequent agreement. Absent such an event, which is in the nature of a novation, the duty of performance of the conditions to the right of payment remains with the assignor.[2] In other words, the assignee of a contract right owes no duty of performance to the obligor.[3]
What that means in the context of this case is that Shaw, as the assignee of the right of the insured to payment under the State Farm insurance contract, had no duty to perform any covenant under the insurance contract because he never agreed to do so. An obligor cannot unilaterally attach conditions to the obligee's right of assignment and cannot bind the assignee to any performance under the contract unless the assignee has agreed. The assignments in this case are straightforward transfers of the right to receive payment that contain no language of assumption of any duty by the assignee healthcare providers:
I hereby authorize and direct you, my insurance company and/or my attorney, to pay directly to DAVID G. SHAW, DC PA d/b/a CENTRAL FLORIDA CHIROPRACTIC CENTER ("Assignee"), such sums as may be due and owing Assignee for the services rendered to me, both by reason of accident or illness, and by reason of any other bills that are due Assignee, and to withhold such sums from any disability benefits, medical payment benefits, No-Fault benefits, or any other insurance benefits obligated to reimburse me or from any settlement, judgment or verdict on my behalf as may be necessary to adequately protect said Assignee. In the event that I do not have insurance coverage, I understand that I remain personally responsible for payment of services rendered. I hereby further give an irrevocable lien to said assignee against any and all insurance benefits named herein and any and all proceeds of any settlement, judgment or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by the Assignee. This is to act as an assignment of my rights and benefits to the extent of the Assignee's services provided.
(Emphasis added.) There is simply no good faith argument to be made that, by taking the assignment of insurance proceeds to the extent of medical services rendered and seeking to collect the assigned policy proceeds, Shaw undertook *333 any duty of performance under the State Farm policy. In exchange for services provided, Shaw took the right to be paid "such sums as may be due and owing" under its patient's insurance policy for the services Shaw rendered.
Another important principle of the law of assignments is that: "As a general rule, the assignee of a non-negotiable instrument takes it with all the rights of the assignor, and subject to all the equities and defenses of the debtor connected with or growing out of the obligation that the obligor had against the assignor at the time of the assignment." Law Office of David J. Stern, P.A. v. Sec. Nat. Servicing Corp., 969 So.2d 962, 968 (Fla.2007) (quoting State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995)). However, the notion that, because an assignee "steps into the shoes of the assignor and takes the assignment subject to all defenses of the obligor," the assignee assumes the obligations of the assignor, simply misapplies the rule. The rule means that the right of the assignee under the contract is no better than its assignor's rights. If the assignor is entitled to be paid, the assignee is entitled to be paid, but if the assignor is not entitled to be paid because of some failure of performance on the part of the assignor, then the assignee is not entitled to be paid either. By accepting an assignment of a right to be paid, the assignee does not obligate itself to perform any covenant under the contract. Moreover, as the rule quoted above plainly says, the defenses available to the obligor are fixed as of the time of the assignment, no subsequent duty on the part of the assignee arises because of the assignment.
The ability to assign contractual rights, including the right to payment, is an important commercial mechanism to facilitate transactions and to secure the payment of obligations, but this device would be completely thwarted if the obligor could impose conditions on the exercise of such rights acquired through assignment. There is a reason why there is a vast body of case law on whether a particular right is or is not assignable, but none recognizing the obligor's right to condition payment of sums due and owing under the contract to the subsequent performance of some contractual duty in the underlying contract.
Here, St. Louis has agreed that whatever monies he is entitled to receive from his automobile insurance policy on account of the care he has been given is payable to Shaw. If no monies are due and owing because of the failure of St. Louis to perform some covenant under the policy, including the examination under oath, then Shaw has no claim against State Farm, precisely because it is subject to State Farm's defenses against the insured. But State Farm may not include in the insurance contract any requirement of performance on the part of the assignee that conditions the right to payment. To the extent that State Farm's policy may have such a provision, it is simply unenforceable. It does not matter whether it is the requirement to submit to an examination under oath, to pay a fee, to accept a discount or anything else. Shaw did not undertake any duty of performance, and State Farm cannot unilaterally impose an obligation on the assignee by putting it in the policy.
This very issue has already been considered and decided by the Third District Court of Appeal in Marlin Diagnostics v. State Farm Mutual Automobile Insurance Co., 897 So.2d 469 (Fla. 3d DCA 2004). In Marlin, the Third District reviewed a judgment of dismissal based on the lower court's determination that State Farm had the right to require a personal injury protection ["PIP"] medical provider to submit to an EUO when that provider had accepted *334 from State Farm's insured an assignment of benefits. The policy in Marlin provided that "a person who suffers a bodily injury and makes a claim under the policy shall `answer questions under oath'. . . ." 897 So.2d at 469. The trial court determined that State Farm had the right to require the appellant to submit to an EUO after accepting the assignment of the insured's benefits.
The Marlin court reversed, holding that when an insured assigns his benefits to a healthcare provider, the obligation to attend an EUO remains with the insured. The obligation to attend an EUO does not shift to the healthcare provider merely because the insured made an assignment of policy benefits payable to cover the provider's bill. Id. The Marlin court also noted that the Legislature had expressly dealt with the insurer's need for information from health care providers who make claims for personal injury benefits by requiring, when requested by the insurance company, that the provider submit a written report of the history, condition, treatment, dates and costs of treatment of the injured person and why the items identified by the insured person were reasonable in amount and medically necessary, together with a sworn statement that the treatment or services rendered were reasonable and necessary with respect to the injury sustained. Id.; see also § 627.736(6)(b), Fla. Stat. (2001). The court pointed out that the statute also gives the insurer permission to petition the court to engage in further discovery.
Prior to Marlin, in Advanced Diagnostics Testing, Inc. v. State Farm Insurance Co., 11 Fla. L. Weekly Supp. C964 (Fla. 11th Cir.Ct. Aug. 17, 2004), the circuit court, sitting in its appellate capacity, had similarly determined that assignee medical providers are not required to attend EUO's. The facts in Advanced Diagnostics are similar to Marlin and this case. State Farm's insured assigned his benefits to the appellant, a medical provider treating the insured after an automobile accident. The county court dismissed the provider's claim because the assignee provider would not submit to an EUO.
In its opinion, the circuit court pointed out that the insured did not assign his insurance policy to the provider, only the right to certain proceeds from his insurance policy. Advanced Diagnostics, 11 Fla. L. Weekly Supp. at C965. Such an assignment could not transfer the insured's obligation to attend an EUO to the health care provider. When an insured assigns PIP benefits to one or more health care providers, the obligation to attend an EUO remains with the insured. The court noted that State Farm would have had a valid defense against the insured if the insured had not attended a requested EUO, but it would not be a defense against the insured that the health care provider did not attend an EUO. Id. The court observed that, under State Farm's policy, a claimant is required under the policy not only to submit to an EUO, but also to undergo an independent medical examination, and it would be absurd to consider that the provider would have to submit to such examination. Id. at C965-66.
The Advanced Diagnostics court made an additional point, however, that has become the red herring of this appeal. It observed that neither party in that case had brought to the attention of the court the provision of the policy defining a "person" as a "human being." The appellate court cautioned in a footnote that, in light of that definition, State Farm and its attorneys could face sanctions if they continued to make the argument that a corporate health care provider is a "person" "making a claim" required to attend an EUO, while *335 its policy explicitly limited the term "person" to human beings. Id. at C966 n. 3.
State Farm has used this piece of the Advanced Diagnostics opinion to set up a straw man, which it then proceeds to knock down with an amendatory endorsement. Suggesting the only reason Marlin and Advanced Diagnostics ruled it was not entitled to an EUO from the medical provider was that their policy limited the EUO obligation to a "person," State Farm purports to have removed this impediment by amending the policy to add the word "organization." However, the reason it cannot require an EUO from the medical providers, as Marlin and Advanced Diagnostics make clear, is that Shaw merely agreed to accept an assignment of the monies due St. Louis under the policy; Shaw did not become the "insured" and Shaw did not undertake any duties under the policy. Nothing State Farm can include in its policy can change those facts, and nothing State Farm can put in its policy can unilaterally oblige Shaw to comply with any condition precedent to payment under the policy. It cannot impose the duty of performing an EUO on the assignee of policy proceeds as a condition of making payment under the policy for benefits that became due when their insured underwent medical treatment.
State Farm's position not only disregards contract law, but also attempts through a policy provision impermissibly to alter Florida's comprehensive PIP statutory scheme. Section 627.736(5), Florida Statutes (2007), contemplates that an insured can authorize the insurer to pay the provider directly. Details of the payment obligation are closely regulated by the statute. Specifically, section 627.736(6)(b), Florida Statutes (2007), provides an elaborate mechanism for insurers to obtain information from health care providers concerning their treatment and expenses:
Every physician, hospital, clinic, or other medical institution providing, before or after bodily injury upon which a claim for personal injury protection insurance benefits is based, any products, services, or accommodations in relation to that or any other injury, or in relation to a condition claimed to be connected with that or any other injury, shall, if requested to do so by the insurer against whom the claim has been made, furnish forthwith a written report of the history, condition, treatment, dates, and costs of such treatment of the injured person and why the terms identified by the insurer were reasonable in amount and medically necessary, together with a sworn statement that the treatment or services rendered were reasonable and necessary with respect to the bodily injury sustained and identifying which portion of the expenses for such treatment or services was incurred as a result of such bodily injury, and produce forthwith, and permit the inspection and copying of, his or her or its records regarding such history, condition, treatment, dates, and costs of treatment; provided that this shall not limit the introduction of evidence at trial.
It is this statute that governs State Farm's ability to demand information from health care providers providing medical treatment to its insureds, including the investigation of its suspicions of insurance fraud. The statute even gives an insurance company the statutory right to petition the court to engage in discovery with those medical providers. Subsection (c) of that same statute states:
In the event of any dispute regarding an insurer's right to discovery of facts under this section, the insurer may petition a court of competent jurisdiction to enter an order permitting such discovery. The order may be made only on motion *336 for good cause shown and upon notice to all persons having an interest, and it shall specify the time, place, manner, conditions, and scope of the discovery. Such court may, in order to protect against annoyance, embarrassment, or oppression, as justice requires, enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.
The very reason for the existence of this statutory scheme is that the insurers have no right to obtain it otherwise from assignees like Shaw. The Legislature has established a scheme that strikes a balance, under court supervision, between the insurers' need for information and the burden on health care providers who accept insurance proceeds in lieu of requiring payment from the insured directly. State Farm may prefer to exercise a contractual right to require multiple EUO's of each health care provider conducted by whomever it chooses, as often as it chooses, but it does not have that right.
Shaw has agreed to accept from St. Louis an assignment of "such sums as may be due and owing." Until the sums are "due and owing," Shaw has no right to claim them from State Farm. By the same token, however, once the insured has performed its obligations under the policy, including, if demanded, submission to an EUO, the sums are "due and owing" and there are no more conditions to fulfillby anybody. The conditions to payment have already been met. As the policy expressly recognizes by classifying the duty to submit to an EUO as an "insured's dut[y]," the duty can only belong to the insured. The duty was never delegated by St. Louis, and Shaw never agreed to assume it. Both as a matter of contract law and common sense, State Farm's attempt to impose it on Shaw cannot succeed. Nevertheless, because this en banc decision is not unanimous and because of the potentially wide-ranging impact of this issue, we certify to the Florida Supreme Court the following question of great public importance:
WHETHER A HEALTH CARE PROVIDER WHO ACCEPTS AN ASSIGNMENT OF NO-FAULT INSURANCE PROCEEDS IN PAYMENT OF SERVICES PROVIDED TO AN INSURED CAN BE REQUIRED BY A PROVISION IN THE POLICY TO SUBMIT TO AN EXAMINATION UNDER OATH AS A CONDITION TO THE RIGHT OF PAYMENT?
JUDGMENT REVERSED and REMANDED; QUESTION CERTIFIED.
MONACO, C.J., ORFINGER, TORPY, LAWSON, EVANDER, COHEN, and JACOBUS, JJ., concur.
SAWAYA, J., dissents, with opinion, in which PALMER, J., concurs.
SAWAYA, J., dissenting.
The majority erroneously eliminates a valuable contract provision that State Farm Fire and Casualty Company has every right to enforce against a claimant making a claim for PIP benefits; the majority fails to properly distinguish a condition precedent to recovery or suit that must be complied with by a claimant from a contract obligation that an assignee of benefits must otherwise agree to be bound by; the majority misinterprets section 627.736(6), Florida Statutes (2007), to require State Farm to obtain what is in essence a bill of discovery in order to receive information regarding the validity of a claim from the very person or organization making the claim or seeking payment from State Farm; the *337 majority misinterprets the clear and unambiguous examination under oath (EUO) clause in the insurance policy issued by State Farm; and the majority cites cases that do not stand for the proposition for which they are cited. Indeed, there is no precedent that the majority can cite for its general holding that an assignee of PIP benefits must actually agree to be bound by an EUO clause in an insurance contract that is a condition precedent to recovery.
The insurance policy State Farm issued to Renard St. Louis contained an EUO clause that specifically provides, "[A]ny person or organization making claim or seeking payment . . . must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require." (Emphasis omitted). After St. Louis was involved in an accident, he received medical treatment and assigned the No-Fault benefits and the cause of action to recover those benefits to David Shaw, David G. Shaw, D.C., P.A., d/b/a Central Florida Chiropractic Center, DC Services, LLC, DC Supply, LLC, and Charles Machler (collectively "Appellants"). The issue is whether State Farm has the right to enforce the EUO provision in the contract against an assignee. I believe that it does.
Long ago, in Claflin v. Commonwealth Insurance Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884), the United States Supreme Court recognized the importance of EUO requirements in insurance contracts when it observed that an insurer is entitled "to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." Id. at 94-95, 3 S.Ct. 507; see also Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 306 (Fla. 4th DCA 1995) (stating that the purpose of an EUO clause is to enable the insurance company to properly investigate claims to protect itself against fraudulent claims (citing Claflin)), review denied, 670 So.2d 938 (Fla. 1996). The Florida Supreme Court recognized a century ago the importance and validity of EUO provisions in insurance contracts in Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 So. 922 (1909). Other courts also recognize that a policy provision requiring submission "`to examination under oath regarding the loss is reasonable and valid, and if breached, the insurer would be deprived of a valuable right for which it had contracted.'" Laine v. Allstate Ins. Co., 355 F.Supp.2d 1303, 1305 (N.D.Fla.2005) (quoting 5A John A. Appleman & Jean Appleman, Insurance Law & Practice § 3549 at 549-50 (1970)).
In the final analysis, this case is all about contract rights. The Florida courts have consistently held that an insurance company has the right to include legally valid provisions and conditions in its policies that it deems desirable or appropriate. Green v. Life & Health of Am., 704 So.2d 1386, 1391 (Fla.1998). State Farm had every right to include the EUO provision in its contract as a condition precedent to payment or suit, just as insurance companies have done in this state for over a century; State Farm had every right to expect and require that the EUO requirement be complied with by any person or organization making a claim or seeking payment so that State Farm can determine whether the claim is proper or fraudulent; and State Farm had every right to require and expect that this clause be complied with by assignees of PIP benefits who are no less capable of filing fraudulent claims than insureds. The insured and his assigneesthe Appellantsdo not have the right to take this valuable contract right and investigative tool away from *338 State Farm through the mere expedient of an assignment.
The insurance policy issued by State Farm makes it explicitly clear that all policy terms and provisions must be complied with before recovery may be had against State Farm. Specifically, the insurance policy issued by State Farm clearly and expressly provides, "There is no right of action against us . . . until all the terms of this policy have been met. . . ." One of those terms in the policy is the EUO provision previously quoted.
The courts have consistently held that an EUO provision in an insurance policy is a condition precedent that must be complied with in order to make a claim or maintain an action to recover policy benefits. See Goldman; see also Starling v. Allstate Floridian Ins. Co., 956 So.2d 511, 513 (Fla. 5th DCA 2007); Fassi v. Am. Fire & Cas. Co., 700 So.2d 51 (Fla. 5th DCA 1997). Courts in other jurisdictions also interpret EUO provisions to be conditions precedent to making a claim and filing suit to recover the claim under the policy. See Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944, 947 (11th Cir.), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990). It is well recognized that failure to comply with this condition precedent is a material breach of the insurance contract that precludes recovery. Goldman; Stringer v. Fireman's Fund Ins. Co., 622 So.2d 145 (Fla. 3d DCA), review denied, 630 So.2d 1101 (Fla.1993).
Appellants certainly fall within the provisions of the EUO clause because they are any person or organization and they are making claim or seeking payment; they should, therefore, be bound by the EUO provision as a condition precedent to making claim or seeking payment through litigation. This comports with Florida law, which has provided for some time that an assignment of benefits or a cause of action to recover those benefits under a contract does not remove from the assignee the burden of compliance with contract conditions. In Shreve Land Co. v. J & D Financial Corp., 421 So.2d 722 (Fla. 3d DCA 1982), the assignor assigned its interest in the purchase price due under a contract. The assignee subsequently recovered a judgment against the original purchaser under the contract. In reversing that judgment, the court held:
The law is well settled that an assignee succeeds to his assignor's rights under the assignment of a contract and takes it with all the burdens to which it is subject in the hands of the assignor. If the assignee seeks to enforce the contract, he must show that all conditions have been performed either by himself or the assignor.
Id. at 724.
This general principle was adopted by the Florida Supreme Court long ago in Florida East Coast Railway Co. v. Eno, 99 Fla. 887, 128 So. 622 (1930), wherein a contractor, Eno, assigned to a bank his rights to proceeds due under a contract from the owner of certain property. An interpleader action was filed by the owner after the bank, as assignee, and other claimants made competing claims to those funds. The court held that
[t]he bank, as Eno's assignee, occupies the same position as did Eno with respect to the moneys, having the same rights, and being subject to the same equities, conditions, and defenses, the assignment not being a negotiable instrument. The mere assignment "of all sums due and to become due the contractor" in and of itself creates no different or other liability of the owner to the assignee than that which existed from the owner to the assignor.
Id. at 626. This rule has been reaffirmed by the courts in more recent decisions. *339 See Law Office of David J. Stern, P.A. v. Sec. Nat. Servicing Corp., 969 So.2d 962, 968 (Fla.2007) ("`As a general rule, the assignee of a nonnegotiable instrument takes it with all the rights of the assignor, and subject to all the equities and defenses of the debtor connected with or growing out of the obligation that the obligor had against the assignor at the time of the assignment.'" (quoting State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995))); Farkus v. Fla. Land Sales & Dev. Co., 915 So.2d 688, 689 (Fla. 5th DCA 2005); Family Bank of Hallandale, 667 So.2d at 259 ("The law is well established that an unqualified assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned. The assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not been made." (citing Dependable Ins. Co. v. Landers, 421 So.2d 175, 179 (Fla. 5th DCA 1982))); Fred S. Conrad Const. Co. v. Exch. Bank of St. Augustine, 178 So.2d 217, 219 (Fla. 1st DCA 1965) ("It is fundamental that the assignee of a contract or non-negotiable chose in action occupies the same position as its assignor and is subject to the same equities, conditions and defenses that could have been asserted against the assignor."); Nusbaum v. Riskin, 136 So.2d 1, 3 (Fla. 2d DCA 1961) ("It is true that an assignee takes the assignment of a non-negotiable chose subject to any defenses the debtor has against the assignor.").
In discussing the general rule that an assignee steps into the shoes of the assignor, the majority asserts that this rule simply means that the assignee acquires no greater rights than the assignor. Applying this rule to this case, it means that just as the insured had no right as a claimant to refuse compliance with the EUO condition precedent, the assignees/Appellants as claimants have no greater right to do so. That is how the court in Prudential Property & Casualty Insurance Co. v. Nardone, 332 N.J.Super. 126, 752 A.2d 859 (2000), applied the rule. In Nardone, which is strikingly similar to the instant case, the injured insured assigned his PIP benefits to his health care provider, who then instituted arbitration proceedings to collect its claims. The insurance policy contained an EUO clause similar to the clause in the instant case, and the assignees refused to attend the requested EUOs. The court held that the refusal to comply with that condition precedent prohibited recovery. The court explained:
Since Dr. Nardone and others, by filing forty-seven complaints for arbitration with the AAA, are seeking payment of PIP benefits on assignment from PruPac's insureds, they are bound to the assignors' contract terms and must comply with the insurance policies' cooperation and EUO clauses. As such, Dr. Nardone, as well as all other assignees, must comply with the contractual EUO and cooperation clauses as a condition precedent to seeking benefits. Mariani v. Bender, 85 N.J.Super. 490, 500, 205 A.2d 323 (App.Div.1964).
As assignees of the allegedly treated parties, Dr. Nardone, Dr. Kundrat, Hermosa Medical Services and Camino Rehabilitation have no greater rights than the assignors. Allstate Ins., Co. v. Lopez, 325 N.J.Super. 268, 277, 738 A.2d 987 (Law Div.1999).
PruPac's contract, under which defendants seek PIP benefits, clearly requires a claimant's cooperation as a condition precedent to recovery of benefits. Specifically, the PruPac policy provides:
YOUR DUTIES AFTER AN ACCIDENT AND LOSS . . . [.] Persons making a claim under this policy must:

*340 . . . .
(2) Cooperate with us in investigating, settling, or defending any loss or suit. Cooperation includes attending hearings and trials, helping in suing others who are responsible for the accident, giving evidence, and helping us get witnesses to a trial. . . .
. . . . .
(7) Give us a Statement Under Oath within 30 days of our request.
. . . .
Furthermore, subject to ordinary standards of reasonableness and fairness, if a claimant does not cooperate with the policy EUO provisions, he or she is not entitled to PIP benefits. New Jersey Auto. Full Ins., Underwriting Assoc. v. Jallah, 256 N.J.Super. 134, 141, 606 A.2d 839 (App.Div.1992). Additionally, the Jallah court noted that an insurer is entitled to an EUO, even if it previously terminated benefits and arbitration has been demanded, and without even showing fraud. Id. at 141, 606 A.2d 839.
. . . .
One may not invoke the judicial process seeking affirmative relief and at the same time flout the duties imposed by that process to avoid development of proof having a bearing upon his or her right to such relief.
752 A.2d at 865-66. Here, prior to the assignment, St. Louis was the one entitled to make a claim or seek payment and, when he assigned his benefits to Appellants, entitlement to assert the claim or seek payment became solely Appellants' right, and Appellants have no more right than St. Louis had to circumvent the EUO policy requirement.
Nevertheless, the majority holds that an EUO provision in an insurance policy is not enforceable against an assignee unless the assignee specifically agrees to comply with that condition precedent and to be bound by it. Otherwise, contends the majority, State Farm can only enforce that condition precedent against the insured. The majority also contends that the EUO provision in the instant insurance policy requires compliance by the insured as an "insured's duty." I disagree.
As to the assertion that an assignee must specifically agree to be bound by an EUO condition precedent, the majority contends that Appellants only took an assignment of the monies "that may be due and owing" and that Appellants did not undertake compliance with any conditions precedent contained in the policy to claim that money or seek payment of it. The assignment clearly provides that "[t]his is to act as an assignment of my rights and benefits to the extent of the Assignee's services provided." Those rights and benefits are contained in the insurance policy, and any money that may be due and owing derives from that policy. Indeed, the courts have clearly held that an action seeking payment of PIP benefits is an action for breach of contract governed by the terms and conditions of the insurance contract. See State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So.2d 1067, 1072 (Fla. 2006) ("The purpose of a PIP suit is to recover damages for breach of an insurance contract."). Simply because the medical provider rendered a service to the insured and took an assignment of the insured's rights and benefits under the insured's insurance policy does not deprive State Farm of the right and ability to contest the validity of those bills and refuse payment. See State Farm Mut. Auto. Ins. Co. v. Hyma Med. Ctr., Inc., 22 So.3d 699, 700 (Fla. 3d DCA 2009); United Auto. Ins. Co. v. Santa Fe Med. Ctr., 21 So.3d 60 (Fla. 3d DCA 2009) ("[T]he thirty-day period for the payment of PIP benefits contained in section 627.736(4)(b) only applies *341 to the payment of benefits that are reasonable, necessary, and related, and the insurer may contest the claim at any time. . . .)." Moreover, the assignment certainly does not deprive State Farm of the right to investigate Appellants' claim to determine if it is valid or deprive State Farm of the right to utilize the EUO provision that was inserted in the policy for that very purpose. There is nothing due and owing regarding a contested claim until it is determined that the claim is reasonable and the services provided were necessary and related to the accident, and there is nothing due and owing under the policy unless the EUO condition precedent in the policy has been complied with by "the person or organization making the claim or seeking payment."
Before any assignee takes an assignment of contractual benefits, it is incumbent on that assignee to first learn the conditions contained in the contract of insurance that must be complied with in order receive those benefits and, if it does not, it acts at its own peril in blindly accepting the assignment. If Appellants were not diligent enough to discover the policy conditions from the insured before the assignment, State Farm certainly made Appellants aware of the EUO provisions in the notices it sent them in reply to their claim for payment.[4] The majority holding literally begs the question whether any assignee would agree to be bound by a condition precedent that may prevent recovery if not complied with when it is not required to do so. The practical effect of the majority holding is that a valuable contract right and investigative tool State Farm has in its contract can be virtually eliminated at the whim of an assignee who may not be magnanimous enough to agree to be bound by a condition precedent to its recovery when it does not have to. This is simply wrong.
Moreover, a condition precedent is not the sort of contract condition to which an assignee must have specifically agreed in order for the courts to conclude that the assignee is bound thereby. In Shreve, for example, the assignee only took an assignment of the assignor's interest in the purchase price due under a contract, yet the court specifically held that the assignee was required to show that "all conditions have been performed [under the contract] either by himself or the assignor." Shreve, 421 So.2d at 724. In Eno, the assignee only took an assignment of the money due or to become due under a contract, and yet the Florida Supreme Court held that the assignee took the assignment subject to the same equities, conditions, and defenses as the assignor. Eno, 128 So. at 626. In neither case did the assignee accept an assignment of the entire contract nor specifically agree to be bound by the conditions of the contract nor defenses that may be asserted against the assignor.
This court's decision in Dependable Insurance Co. v. Landers, 421 So.2d 175 (Fla. 5th DCA 1982), clearly demonstrates the type of duty or obligation that an assignee is not liable for when it accepts *342 an assignment of contract benefits unless the assignee specifically agrees to be bound by it. Landers involved an assignment of a retail installment contract. The assignor/bank repossessed the car without proper notice to the debtor and sold it prior to its assignment of the contract. A statute in effect provided that a debtor may recover damages against the secured party if the property is improperly repossessed without proper notice. The issue was whether the assignee was liable for the damages caused by the wrongful repossession by the assignor/bank prior to the assignment. This court held that the assignee did not expressly assume that liability when it took the assignment. In so holding, this court relied on the general rule that "unless the assignee assumes the assignor's duties or liabilities, it is not liable to the debtor affirmatively, that is, beyond the point of defeating its claim. Failure to give notice in this case would be a `shield' and not a `sword' as regards [the assignee]." Id. at 179 (citations omitted). Here, there is no affirmative liability that Appellants were required to expressly assume through the assignment beyond the point of defeating the claim. But like the assignee in Landers, Appellants here are subject to the defenses that may be asserted by the other party to the contract to defeat the claim. Remarkably, the majority actually cites Landers as its authority for the proposition that an assignee must agree to be bound by contract conditions when Landers clearly demonstrates that a condition precedent, like an EUO, is not a contract condition to which an assignee must expressly agree to be bound by.
The other cases cited in the majority opinion do not stand for the proposition that the assignee of No-Fault benefits must specifically agree to be bound by conditions precedent in the policy. In De La Rosa v. Tropical Sandwiches, Inc., 298 So.2d 471 (Fla. 3d DCA 1974), cert. denied, 312 So.2d 760 (Fla.1975), there was no assignment of anything. That case involved a sale of stock and assets of a corporation. The initial sale of stock was secured by a promissory note executed by the buyer. The buyer subsequently sold the stock to another buyer, who assumed the obligation under the note. That buyer subsequently sold the stock to yet another buyer, who did not assume the obligations under the promissory note. The Third District Court simply held that the last buyer could not be held liable under the note because it did not assume the liability under the note. Not only did this case not involve an assignment of a policy and cause of action, but also the assumption of liability at issue in De La Rosa is far different from compliance with a condition precedent to suit.
The decision in Sans Souci v. Division of Florida Land Sales & Condominiums, 448 So.2d 1116 (Fla. 1st DCA 1984), also cited by Appellants, concerned the issue whether a novationwhich requires the existence of a previously valid contract, the agreement of all the parties to a new contract, the extinguishment of the original contractual obligation, and a valid new contracthad occurred. Novation is not an issue in the instant case.
The majority contends that despite the assignment, only the insured is required to attend an EUO. The majority also contends that the insurance contract specifies that EUO compliance is the "insured's dut[y]." I disagree. The plain language of the EUO provision states that "any person or organization making claim or seeking payment" may be required to attend the examination. "An assignment is a transfer of all the interests and rights to the thing assigned." Lauren Kyle Holdings, Inc. v. Heath-Peterson Const. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2003); see also Price v. RLI Ins. Co., 914 So.2d 1010, *343 1013 (Fla. 5th DCA 2005); Rose v. Teitler, 736 So.2d 122, 122 (Fla. 4th DCA 1999) ("[I]t is well established that an `assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned.'" (quoting Family Bank of Hallandale, 667 So.2d at 259)). Once assigned, the assignor has no right to enforce the right or interest. Price, 914 So.2d at 1013-14; Lauren Kyle Holdings, 864 So.2d at 58. In Continental Casualty Co. v. Ryan Inc. Eastern, 974 So.2d 368 (Fla.2008), the court more fully explained these principles of assignment:
An assignment has been defined as "a transfer or setting over of property, or of some right or interest therein, from one person to another." Black's Law Dictionary 128 (8th ed. 2004) (quoting Alexander M. Burrill, A Treatise on the Law and Practice of Voluntary Assignments for the Benefit of Creditors § 1, at 1 (James Avery Webb ed., 6th ed. 1894)). Essentially, it is the "voluntary act of transferring an interest." DeCespedes v. Prudence Mut. Cas. Co., 193 So.2d 224, 227 (Fla. 3d DCA 1966); accord Fla. Power & Light Co. v. Road Rock, Inc., 920 So.2d 201, 204 (Fla. 4th DCA 2006); 3A Fla. Jur.2d Assignments § 1 (2007); 6 Am.Jur.2d Assignments § 1 (2007). Importantly, once transferred, the assignor no longer has a right to enforce the interest because the assignee has obtained all "rights to the thing assigned." Price v. RLI Ins. Co., 914 So.2d 1010, 1013-14 (Fla. 5th DCA 2005) (quoting Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2003)).
Id. at 376. Hence, when the insured assigned to Appellants his rights to the No-Fault benefits and his cause of action to collect those benefits regarding the medical services Appellants rendered, the insured could no longer be "any person or organization making claim or seeking payment" because all of those rights were transferred to Appellants via the assignment. As the court explained in Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003), "In fact, where an insured does assign PIP benefits to the medical provider, it has been ruled an unqualified assignment which removes the insured's standing to bring a direct action against the insurer, even though the insured remains liable for any medical bills not paid by the insurer." Id. at 893 n. 3 (citing Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So.2d 469 (Fla. 5th DCA 2001); Livingston v. State Farm Mut. Auto. Ins. Co., 774 So.2d 716, 717 (Fla. 2d DCA 2000) ("As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a health care provider, the insured may not file a lawsuit to collect the assigned benefits.")); see also Schuster v. Blue Cross & Blue Shield of Fla., Inc., 843 So.2d 909, 911-12 (Fla. 4th DCA 2003) ("Under Florida law, an insured may assign his right to benefits under a contract of insurance. The effect of such an assignment is to place the insured's cause of action for such benefits in the provider.") (citations omitted). Once the assignment was made, State Farm could no longer require the insured to attend the EUOit could only require Appellants, as assignees, to do so. But if, as Appellants contend, State Farm may not require the assignees to attend an EUO, State Farm loses the right it bargained for in the policy to require the person or organization making claim or seeking payment to attend the EUO through the mere expediency of an assignment. This is wrong.
As to the majority's contention that the insurance contract classifies the EUO condition precedent as an "insured's dut[y]," I note that is not an issue raised by any of *344 the parties to these proceedings.[5] Nevertheless, the pertinent policy provisions in the section of the policy relating to the EUO requirement belie that contention. The pertinent section in the policy provides:
Questioning Under Oath
Under:
a. Liability Coverage and Property Damage Liability Coverage, each insured;

b. No-Fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage any person or organization making claim or seeking payment; and
c. Physical Damage Coverages, you or the owner of a covered vehicle, or any other person or organization making claim or seeking payment;
must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require. Such person or organization must answer questions under oath, asked by anyone we name, and sign copies of the answers. We may require each person or organization answering questions under oath to answer the questions with only that person's or organization's legal representative, or representatives and no other person present.
(Emphasis in original). This part of the insurance policy clearly specifies in unambiguous terms that the particular coverage dictates who is required to attend an EUO. Claims made for No-Fault benefits under subsection b, which is the coverage involved in the instant case, allow State Farm the right to require any person or organization making a claim or seeking payment to attend the EUO, while claims made for liability and property damage liability under subsection a allow State Farm the right to require the insured to attend an EUO. Clearly, an assignee is any person or organization making a claim or seeking payment. Hence, according to the clear provisions of the insurance policy, the argument asserted in the majority opinion must necessarily fail when, as in the instant case, the coverage involved is No-Fault. Courts must apply the guiding principle adopted by the Florida courts that "insurance contracts are construed according to their plain meaning." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005).
The majority's reliance on the decisions in Marlin Diagnostics v. State Farm Mutual Automobile Insurance Co., 897 So.2d 469, 469 (Fla. 3d DCA 2004), and Advanced Diagnostics Testing, Inc. v. State Farm Insurance Co., 11 Fla. L. Weekly Supp. C964, C965 (Fla. 11th Cir.Ct. Aug. 17, 2004), is misplaced. Those decisions are clearly distinguishable. The EUO clause in the instant case is much different from the EUO clauses at issue in Marlin, 897 So.2d at 469, which provided that "a person who suffers a bodily injury and makes a claim under the policy shall `. . . answer questions under oath . . .,'" and in *345 Advanced, 11 Fla. L. Weekly Supp. at C965, which provided that "[a]ny person who suffers a bodily injury . . . must notify us of the claim in writing as soon as reasonably possible. . . . The person making claim also shall: . . . be examined [and]. . . answer questions. . . ." The circuit court noted in Advanced that the policy specifically defined "person" as "a human being." 11 Fla. L. Weekly Supp. at C965. Under these specific provisions, unlike the EUO provisions in the instant case, only the person (the human being) who suffered the bodily injury must attend the EUO and this is why the court in Advanced held that "it is clear under the terms of the insurance policy drafted by State Farm, that neither Advanced nor the treating physician was required to attend an EUO as a condition precedent to filing suit." Id. Contrary to the assertion made by the majority, the specific policy provisions led the courts in Marlin and Advanced to hold that despite the assignment of policy benefits, the obligation to attend the EUO remained with the insured. In response to the holdings in Advanced and Marlin, State Farm amended its insurance policies to require that "any person or organization making claim or seeking payment" be examined. Therefore, unlike the assignees in Advanced and Marlin, the assignees in the instant case are clearly any person or organization that fall squarely within the meaning of the EUO clause provisions. I believe that had the courts in Marlin and Advanced reviewed the policy provision at issue in the instant case, a different decision would have been rendered.
Finally, I reject the assertion that section 627.736(6), Florida Statutes (2007), provides the exclusive means for a No-Fault insurer to obtain pre-suit discovery from a medical care provider who is the claimant. There is nothing in the provisions of section 627.736(6) that suggests insurers are prohibited from conducting an EUO of a medical care provider that is a claimant, and there is nothing in the statute that provides that the statute is the sole and exclusive means by which a No-Fault insurer may obtain the pre-suit information requested in an EUO. If that was the intent of the Legislature in enacting the statute, it certainly would have said so in clear and explicit terms, and it did not. The majority's reliance on Marlin is once again misplaced. The court in Marlin, after holding that the particular provisions of the EUO clause at issue in that case only applied to the insured, simply recognized that the insurance company could acquire the requested information pursuant to section 627.736(6)(b). Marlin does not hold that the statute is the sole and exclusive means of obtaining medical information, and Marlin certainly does not hold that the statute is the exclusive means when an EUO clause, like the one in the instant case, does apply to medical provider/assignees. I do not think that the Legislature ever intended to require an insurer to expend the time and money to obtain what is in essence a bill of discovery to acquire medical information from the very medical provider/claimant seeking payment under an insurance policy that provides the insurer the right and ability to obtain the same information through an EUO.[6]
Indeed, the majority essentially concedes that the statute is not the exclusive method for insurers to obtain medical information from medical providers/assignees because the majority holds that a medical *346 provider/assignee may be bound by an EUO clause if the assignment specifically requires it. Hence, the issue in this case is whether Appellants must comply with the EUO clause in the policy in order to make a claim or seek payment of PIP benefits under that policy without the necessity of specifically agreeing to be bound by that policy condition. Application of the statute is not determinative of this issue and is really a non-issue in this case.
I conclude that the policy clearly and unambiguously requires that any person or organization making claim or seeking payment for No-Fault benefits comply with the EUO provisions if requested by the insurer. Those provisions are a condition precedent to making claim or seeking payment. Appellants are persons or organizations making claim or seeking payment, and thus State Farm was within its rights under the policy to require Appellants to attend an EUO. Appellants, as assignees of the No-Fault benefits and cause of action under the policy, were not required to specifically assume this condition in order to be bound by it. Accordingly, the judgment rendered by the trial court should be affirmed.
State Farm has not only lost its contract right in the instant insurance policy, it has lost its right to enforce the EUO provision against assignees in all of the insurance policies it has issued that contain this EUO clause. But the loss is not restricted to State Farm; the majority holding applies to any insurance company that has issued a PIP policy with the same or similar EUO clause. The majority is correct that its opinion will have wide-ranging impact throughout the state and that this matter is one of great public importance. Therefore, I agree that the Florida Supreme Court should review this case as a matter of great public importance. The certified question should be:
WHETHER THE EUO PROVISION IN STATE FARM'S POLICIES IS A CONDITION PRECEDENT THAT MUST BE COMPLIED WITH WHEN A MEDICAL CARE PROVIDER TAKES AN ASSIGNMENT OF NO-FAULT BENEFITS AND CAUSE OF ACTION FROM THE INSURED WITHOUT SPECIFICALLY AGREEING TO BE BOUND BY THAT CONDITION.
PALMER, J., concurs.
NOTES
[1] One assignment assigned policy benefits to David G. Shaw, D.C., P.A., d/b/a Central Florida Chiropractic Center. This assignment provides as follows:

ASSIGNMENT OF BENEFITS
I hereby authorize and direct you, my insurance company and/or my attorney, to pay directly to DAVID G. SHAW, DCPA d/b/a CENTRAL FLORIDA CHIROPRACTIC CENTER ("Assignee"), such sums as may be due and owing Assignee for the services rendered to me, both by reason of accident or illness, and by reason of any other bills that are due Assignee, and to withhold such sums from any disability benefits, medical payment benefits, No-Fault benefits, or any other insurance benefits obligated to reimburse me or from any settlement, judgment or verdict on my behalf as may be necessary to adequately protect said Assignee. In the event that I do not have insurance coverage, I understand that I remain personally responsible for payment of services rendered. I hereby further give an irrevocable lien to said assignee against any and all insurance benefits named herein and any and all proceeds of any settlement, judgment or verdict which may be paid to me as a result of the injuries or illness for which I have been treated by the Assignee. This is to act as an assignment of my rights and benefits to the extent of the Assignee's services provided.
ASSIGNMENT OF CAUSE OF ACTION
In the event my insurance company is obligated to make payments to me upon charges made by the Assignee for its services [but] refuses to make such payments, upon demand by me or Assignee, I hereby assign and transfer to Assignee any and all causes of action, and proceeds from such causes of action, that I might have or that might exist in my favor against such insurance company and authorize the Assignee to prosecute said cause of action either in my name or Assignee's name and further I authorize Assignee to compromise, settle or otherwise resolve said claim of action as they see fit.
The other assigned benefits to DC Services, LLC. This assignment provides as follows:
Assignment of Benefits/Cause of Action
I hereby assign from any and all automobile policies which provide medical benefits or no-fault benefits, all rights, title and interest to DC Services, LLC. ("Assignee") for payment for services rendered unto me both by reason of accident or illness. In the event the insurance company fails to pay Assignee the full amount owing to Assignee after proper statutory notice, I hereby also assign this instrument, all rights and causes of action in tort, in contract and the laws of Florida, against the personal injury protection carrier for the above named insured/patient for its failure to pay for services rendered unto me by Assignee in relation to my accident or illness. This assignment may only be rescinded [or] reassigned by the mutual consent of the patient/insured/assignor and Assignee.
[2] Sans Souci v. Div. of Fla. Land Sales & Condos, 421 So.2d 623, 630 (Fla. 1st DCA 1982).
[3] Dependable Ins. Co. v. Landers, 421 So.2d 175 (Fla. 5th DCA 1982); De La Rosa v. Tropical Sandwiches, Inc., 298 So.2d 471 (Fla. 3d DCA 1974).
[4] The record reveals that State Farm made repeated requests to Appellants to comply with the EUO requirement. In State Farm's initial request, it quoted the EUO clause to Appellants and advised them that if they did not comply, payment would not be forthcoming. State Farm filed affirmative defenses in the declaratory relief action alleging that Appellants refused to comply with the EUO condition precedent and filed a counterclaim that included several counts alleging unlawful patient brokering, unnecessary diagnostic testing, deceptive and unfair trade practices, and unjust enrichment. An amended counterclaim was subsequently filed by State Farm adding other counts based on fraud and conspiracy to commit fraud.
[5] What the majority is referring to is a caption entitled, "Reporting Claims-Insured's Duties." After discussing the insured's duties to report any claim in the first subsections of that part of the policy, the policy contains provisions regarding the EUO requirements in a subpart captioned, "Other Duties." As I have discussed, the provisions regarding the EUO requirement are clear and unambiguous. Even if this were an issue that could be properly raised in the majority opinion, the courts have consistently held that a caption in an insurance policy may not be used to create an ambiguity in the policy provisions. Itnor Corp. v. Markel Int'l Ins. Co., 981 So.2d 661 (Fla. 3d DCA 2008); Winter Garden Ornamental Nursery, Inc. v. Cappleman, 201 So.2d 479 (Fla. 4th DCA 1967).
[6] "[Florida Statute section] 627.736(6)(c) has long been construed to empower insurers, upon good cause shown, to petition a court for a bill of discovery permitting the insurer to conduct discovery concerning a person's injuries, wages, medical treatment and costs of treatment." 7 Fla. Prac., Motor Vehicle No-Fault Law (PIP) § 6:5 (2009-2010 ed.)