864 So.2d 55 (2003)
LAUREN KYLE HOLDINGS, INC., d/b/a Sago Homes, Appellant,
v.
HEATH-PETERSON CONSTRUCTION CORP., etc., Appellee.
Nos. 5D02-3358, 5D03-980.
District Court of Appeal of Florida, Fifth District.
December 12, 2003.
Rehearing Denied January 28, 2004.
*56 Eric S. Mashburn, Winter Garden, for Appellant, Lauren Kyle Holdings, Inc., d/b/a Sago Homes.
James S. Toscano and Rachel D. Gebaide, of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellee.
TORPY, J.
This is a contract dispute concerning the sale of real property for development. Appellant challenges the entry of summary judgment against it resulting from the trial court's conclusion that Appellant breached a contract by assigning its contractual rights, contrary to an express prohibition against assignment without consent. We conclude that Appellant did not "assign" the contract and accordingly reverse the summary judgment against Appellant.
Appellee (hereinafter "Peterson") owned real estate in Orange County consisting of 34 lots, referred to as Phillips Cove Condominium. On May 24, 2000, Appellant (hereinafter "Sago") and Peterson entered into an "Exclusive Sales Agreement" ("Peterson contract") in which Peterson granted to Sago the exclusive right to purchase the 34 lots. The Peterson contract stated that it was for a term of 540 days and included the following pertinent provisions:
1. PURCHASE AND SALE

Subject to the provisions of this Agreement [Peterson] grants to Sago the exclusive right to purchase the thirty-four (34) condominium units (lots) on the following terms:
* * *
C. Sago shall purchase two (2) units (lots) within sixty (60) days of the effective date of this Agreement.
D. Sago shall commence construction of one (1) spec home and one (1) model home on the initial two (2) units (lots) as soon as possible following the closing of the purchase.
E. Sago will maintain at least one (1) spec home and one (1) model home on the project at all times. However, Sago shall be allowed a thirty (30) day delay between the closing of the sale of the existing spec home or model home and the commencement of construction of the replacement spec home or model home as required under this paragraph.
* * *
4. EXCLUSIVE BUILDER

Sago, during the term of this Agreement, shall have the exclusive right to construct homes on the units (lots) in Phillips Cove Condominium.

*57 5. MARKETING

In addition to the construction of the model home/sales office that Sago shall maintain on the property, Sago shall do the following to promote the sale of homes to be constructed by Sago in Phillips Cove Condominium:

A. Sago shall be entitled to install and maintain signage on the property advertising the construction and sale of homes in Phillips Cove Condominium project.
B. Sago shall immediately take over marketing of the Phillips Cove Condominium project.
* * *
23. SUCCESSOR AND ASSIGNS

This Agreement shall be construed upon and inure to the benefit of the successors and assigns of the parties hereto. Sago shall not have the right to assign this Agreement without the consent of Owner.

Pursuant to the Peterson contract, Sago purchased lots 32 and 33 from Peterson on August 9, 2000. Shortly thereafter, on September 8, 2000, Sago and Sunland Homes ("Sunland") entered into a "Contract for Sale and Purchase" with addenda ("Sunland contract") in which Sago sold all 34 lots of the Phillips Cove Condominium to Sunland. The Sunland contract included an "Addendum to Contract for Sale and Purchase," which expressly took "precedence" over the printed terms in the Contract for Sale and Purchase. The Addendum included the following pertinent provisions:
6. Sunland shall perform Sago's obligations under the Exclusive Sales Agreement between Sago and Heath-Peterson Construction Corporation dated May 24, 2000 and the Post Closing Agreement dated August 9, 2000. Sunland agrees to hold harmless and indemnify Sago from any liability and/or damages, including attorney fees, which results from Sunland's failure to perform Sago's obligations under those agreements, including but not limited to the following obligations:
A. Sunland shall commence construction of one (1) spec home and one (1) model home on the initial two (2) units (lots) as soon as possible following the closing of the purchase.
B. Sunland shall maintain at least one (1) spec home and one (1) model home on the project at all times. However, Sunland shall be allowed a thirty (30) day delay between the closing of the sale of the existing spec home or model home and the commencement of construction of the replacement spec home or model home as required under this paragraph.
C. In addition to the construction of the model home/sales office that Sunland shall maintain on the property, Sunland shall do the following to promote the sale of homes to be constructed by Sunland in Phillips Cove Condominium:

1) Sunland shall be entitled to install and maintain signage on the property advertising the construction and sale of homes in Phillips Cove Condominium project.
2) Sunland shall immediately take over marketing of the Phillips Cove Condominium project.
* * *
It is undisputed that Sago did not seek consent from Peterson prior to entering into the Sunland contract. In his deposition, the president of Peterson stated that *58 he became aware of an involvement by Sunland in mid-September when he was informed that Sunland signs were on the property. He drove to the property, saw Sunland signs everywhere, and then contacted Sago. Sago and Peterson entered into negotiations for Peterson to consent to the Sunland contract. In exchange for its consent to an assignment, one of the things that Peterson requested was onehalf of the additional monies Sago made in its deal with Sunland. The negotiations continued until October 13, 2000, when Sago and Peterson reached an impasse.
At the end of October, 2000, Sago sold the initial two lots it had purchased from Peterson to Sunland. Peterson discovered the sale of the two lots by checking the public records. On November 3, 2000, Peterson's attorney sent a letter to Sago informing Sago that Peterson considered Sago in breach of the Peterson contract.
On November 27, 2000, Peterson filed a complaint against Sago seeking declaratory and injunctive relief. Sago filed an answer, affirmative defenses and counterclaim. Thereafter, Peterson moved for summary judgment on its claims and on Sago's counterclaim. The trial court granted Peterson's motion, finding that Sago breached the contract "when [it] assigned all [its] rights under [the Peterson contract] to a third party." During the pendency of the proceedings below, in July of 2001, Peterson and Sunland entered into a contract for the sale of the lots on terms similar to those contained in the Sunland contract.
This consolidated appeal challenges the summary judgment granted in favor of Peterson and the award of attorney's fees based thereon. We conclude that the trial court erred in concluding that, by execution of the Sunland contract, Sago violated the prohibition against assignment contained in the Peterson contract.
An assignment is a transfer of all the interests and rights to the thing assigned. Dept. of Rev. v. Bank of America, 752 So.2d 637 (Fla. 1st DCA 2000); Rose v. Teitler, 736 So.2d 122 (Fla. 4th DCA 1999). The assignee thereafter stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name. Dove v. McCormick, 698 So.2d 585 (Fla. 5th DCA 1997); State Farm Fire and Cas. Co. v. Ray, 556 So.2d 811 (Fla. 5th DCA 1990). Because an assignment vests in the assignee the right to enforce the contract, an assignor retains no rights to enforce the contract after it has been assigned. Estate of Basile v. Famest, Inc., 718 So.2d 892 (Fla. 4th DCA 1998).
Here, Sago did not transfer to Sunland the right to purchase lots from Peterson; Sunland only obtained the right to purchase lots from Sago. Sago remained liable to sell lots to Sunland even if Peterson defaulted in its obligation to sell to Sago, and Sunland could not enforce its right to purchase lots directly against Peterson. Moreover, Sago retained the right to purchase lots from Peterson in the event of a default by Sunland. From these circumstances, it is clearly apparent that an assignment did not occur.
The foregoing notwithstanding, Peterson urges that we should affirm the trial court under the "tipsy coachman" rule because the judgment may be supported on grounds not relied upon by the trial judge. Peterson argues that the sale of the two lots to Sunland constituted a breach of the contract because Sago could no longer perform its obligation to construct a model home. We reject this argument for two reasons. First, under the express terms of the Peterson contract, Sago had the right to sell the lots, even the lot on which the model was to be constructed. Second, there is nothing in the *59 language of the Peterson contract that precludes Sago from contracting with others to construct the model home or to perform its other obligations under the contract.
Based on the foregoing, the summary judgment and judgment awarding attorney's fees are reversed.
REVERSED and REMANDED.
SHARP, W., and PETERSON, JJ., concur.