PRYOR, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority opinion that we have jurisdiction to decide this appeal, that Article 3.1 is not ambiguous, and that the third sentence of Article 3.1 does not preclude Rad Source from the development or marketing of the RS 3400 because the RS 3400 does not embody, in whole or in part, the patents. I also agree that the district court did not clearly err when it found that the failure of Rad Source to maintain the ’255 patent was not a material breach of the agreement and that Rad Source did not unreasonably refuse consent to the proposed assignment of the license agreement from Nordion to Best.
But the rest of the majority opinion makes no sense. The majority opinion certifies a question to the Supreme Court of Florida that is controlled by a bright-line rule that has been uniformly followed *857 by Florida courts and suggests to the Supreme Court of Florida that it might wish to consider another question that was never raised, briefed, or argued by any party. The majority opinion then invents out of whole cloth a justification for an internally inconsistent decision of the district court about standing to seek damages. Because I cannot agree with these aspects of the majority opinion, I respectfully dissent.

1. Florida Law Is Clear that the Agreement Between Nordion and Best Is a Sublicense.

The uniform precedent of Florida courts confirms that the agreement between Nor-dion and Best constituted a sublicense, not an assignment. The majority certifies to the Supreme Court of Florida the question whether the agreement between Nordion and Best, in which Nordion transfers to Best “an exclusive right and sublicense ... to Use the Licensed Technology for the System and for the single power supply version of the System, in the Territory all on the terms and conditions contained in the License Agreement” for a period of time “equal to the term of the License Agreement less one (1) day,” constitutes an assignment or a sublicense as a matter of law. Florida courts follow the traditional rule at common law that an assignment is an agreement that transfers all rights and duties under a contract and a subli-cense is an agreement that transfers something less than all of the rights and duties. Under Florida law, “the criterion for determining whether a transfer in the form of a lease constitutes an assignment or a sublease is whether the entire interest in the term is transferred without a reversion being retained by the original lessee.” C.N.H.F., Inc. v. Eagle Crest Dev. Co., 99 Fla. 1238, 128 So. 844, 845 (1930); see Estate of Basile v. Famest, Inc., 718 So.2d 892, 892 (Fla.Dist.Ct.App.1998). Florida appellate courts have applied the principle that “[a]n assignment is a transfer of all the interests and rights to the thing assigned” in several contexts, including the lease of rental property, the assignment of automobile financing contracts, and a real estate contract for the sale of lots. See, e.g., Leesburg Cmty. Cancer Ctr. v. Leesburg Reg’l Med. Ctr., 972 So.2d 203, 206 (Fla.Dist.Ct.App.2007); see also Price v. RLI Ins. Co., 914 So.2d 1010, 1013 (Fla.Dist.Ct.App.2005); Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp., 864 So.2d 55, 58 (Fla.Dist.Ct.App.2003); Dep’t of Rev. v. Bank of Am., N.A., 752 So.2d 637, 642 (Fla.Dist.Ct.App.2000); Estate of Basile, 718 So.2d at 892-93. And the Supreme Court of Florida has twice endorsed this principle. Continental Cas. Co. v. Ryan Inc. E., 974 So.2d 368, 376 (Fla.2008); C.N.H.F., Inc., 128 So. at 845.
Florida courts use a bright-line rule to distinguish an assignment from a sublease in part because the two have different consequences for the original obligor on the contract. If the entire interest in the contract has been transferred, the assign-ee “stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name.” Lauren Kyle, 864 So.2d at 58; see also C.N.H.F., Inc., 128 So. at 845. The assignor is no longer liable on the original contract and retains no rights to enforce the contract after its assignment. Lauren Kyle, 864 So.2d at 58; Estate of Basile, 718 So.2d at 892-93. By contrast, a sublicensor remains liable on the original contract and retains the right to enforce that contract against the other party. See Lauren Kyle, 864 So.2d at 58. A sublicensee cannot enforce a contract against the original contracting party, but must instead sue the sublicensor for any breach of contract by the other original contracting party. See id.
*858 Under Florida law, the agreement between Nordion and Best is a sublicense because Nordion did not grant all of its rights to Best. The term of the sublicense given was for a period of time equal to the term of the license agreement, less one day. Nordion also retained the right to use the licensed technology after the conclusion of the original license agreement without any further obligations to Rad Source. Because Nordion retained some of its initial rights under the license agreement, the agreement between Nordion and Best is a sublicense as a matter of Florida law. The district court clearly erred when it found that Nordion breached the license agreement when it entered its agreement with Best because the agreement, as a matter of law, was not an assignment. I would not certify to the Supreme Court of Florida a question controlled by a bright-line rule that has been uniformly followed by the appellate courts of Florida and twice approved by the Supreme Court of Florida. See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983) (“A federal court applying state law is bound to adhere to decisions of the state’s intermediate appellate courts absent some persuasive indication that the state’s highest court would decide the issue otherwise.”).
The majority opinion does not offer any decision from a Florida court to support its contention that the Florida courts might not apply the bright-line rule that distinguishes an assignment from a sublicense to the agreement between Nordion and Best. Instead, the majority opinion decides to certify the question because no Florida cases address a situation precisely like this one. But the purpose of a bright-line rule is to promote certainty and judicial efficiency by providing guidance for courts faced with factually disparate situations. These benefits of a bright-line rule are undermined when we certify a question to the Supreme Court of Florida about whether to apply a bright-line rule to a particular contract situation, when the Florida courts have uniformly applied it to all contract cases. See, e.g., Lauren Kyle, 864 So.2d at 58.
The majority opinion also expresses concern that no Florida court has applied the bright-line rule to a case that “involve[s] a situation of rebuffed attempt at assignment,” Majority Opinion at 855, but this concern reflects a failure to respect the freedom of contract. Nordion and Rad Source, two sophisticated parties, negotiated for over a year to create the license agreement at issue in this appeal, and their negotiations included active discussion of the sublicense right contained in the agreement. Both parties received the advice of counsel before they signed the agreement. And the Chief Executive Officer of Rad Source, Randol Kirk, testified that he knew when he signed the license agreement that it did not limit the subli-cense right to specific purposes and that he “had agreed to a broader sublicense than had been reflected in prior documents.” When Rad Source refused to consent to an assignment of the license agreement and Nordion entered its sublicense agreement with Best, the benefit of this bargain over the right to sublicense was realized by both parties: Nordion was able to accomplish many of the same objectives through a broad sublicense, but Rad Source retained its ability to hold Nordion liable on the license agreement for any future breaches of the agreement by Best. Nothing in Florida law suggests that a court should later ignore the parties’ reliance on a well-established bright-line rule to rewrite the contract they freely negotiated.
The majority opinion also suggests in a footnote that the Supreme Court of Florida may wish to consider whether the doc *859 trine of equitable assignment should apply to this matter, but no party has raised that issue and the question does not appear to have any merit under Florida law. We have repeatedly held that arguments not raised before the district court and in the initial brief of a party on appeal will not be considered on appeal because they fall outside the scope of appellate review and consideration of them would undermine the adversarial process. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330-31 (11th Cir.2004). Aside from the fundamental problem of ignoring the scope of our review, the majority opinion fails to explain why a doctrine, under Florida law, to effectuate the intent of contracting parties should be used to frustrate the intent of Nordion and Best, both of which entered the sublicense agreement with the intent to comply with the consent provision of the license agreement. See Morrow v. Commonwealth Life Ins. Co., 118 Fla. 371, 159 So. 525, 526 (1935) (“[C]ourts of equity have long since disregarded the ancient common-law rule against recognition of assignments of choses in action in actions at law, by recognizing certain kinds of actually executed assignments as valid equitable assignments, which equity should recognize and protect in an equitable suit where that is necessary to effectuate the plain intent of the parties and to hold otherwise would be unjust.”); SourceTrack, LLC v. Ariba, Inc., 958 So.2d 523, 526 (Fla.Dist.Ct.App.2007) (“A court may find an equitable assignment where necessary to effectuate the parties’ plain intent or to avoid injustice.”); Giles v. Sun Bank, N.A, 450 So.2d 258, 260 (Fla.Dist.Ct.App.1984) (“No particular words or form of instrument is necessary to effect an equitable assignment and any language, however informal, which shows an intention on one side to assign a right or chose in action and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment.”). Neither Nordion nor Best intended their agreement to operate as an assignment, and the only party that would benefit from construing the sublicense agreement in that way is Rad Source. The parties to this agreement would surely be surprised to see the doctrine of equitable assignment invoked here, so unmoored from its theoretical foundation and the record of the appeal.

2. Nordion Is Entitled to an Opportunity to Prove Damages.

The majority opinion also invents an argument to reconcile the internally inconsistent rulings of the district court on the issue of standing to seek damages. Although the district court found that Rad Source had waived both its claim for breach of contract based on the agreement between Nordion and Best and its right to use that breach as an excuse from further performance of the contract, the district court nevertheless concluded that Nordion lacked standing to seek damages for a later breach of the license agreement by Rad Source. But hornbook law on contracts establishes that this conclusion is in direct conflict with the factual findings about waiver and estoppel: “There are few principles of contract law better established, or more uniformly acknowledged, than the' rule that when a contract not fully performed on either side is continued in spite of a known excuse, the right to rely upon the known excuse is waived; in turn, the defense based on the excuse is lost and the party who would otherwise have been excused is liable if he or she subsequently fails to perform.” 13 Williston on Contracts § 39:31 at 639-40 (4th ed. 2000). I agree with Nordion that “[tjhere is simply no way to reconcile” the findings about waiver and estoppel with *860 the ruling that Nordion lacked standing. And I agree with Nordion that, because Rad Source did not appeal the adverse factual findings by the district court, we cannot “resurrect” a breach that has been waived “to serve as the ‘first breach’ and thereby deny [Nordion] the right to recover damages for Rad Source’s breaches.”
The majority opinion creatively reconstructs the opinion of the district court “as finding that Rad Source waived (and was estopped with respect to) its claim for damages against Nordion for having committed the first, material breach, but Rad Source did not waive its right to rely on Nordion’s first, material breach to excuse its breach of the non-compete clause (i.e., its actions in developing and marketing the RS 3400 system).” Majority Opinion at 852-53. The district court said no such thing, and we have no authority to reconstruct the findings by the district court in this manner. The district court explained as follows that Rad Source had waived any claim that it had for breach of contract by Nordion when it failed to object, as it was required to do under the contract, to the completion of the agreement between Nor-dion and Best:
Rad Source waived its claim that Nor-dion breached the License Agreement by improperly assigning the License Agreement or by entering into a subli-cense with the Best Plaintiffs. Rad Source was at all times fully aware that Best was manufacturing and selling the Raycell, yet never notified Nordion of any alleged material breach of the License Agreement, and failed to terminate the License Agreement in accordance with Article 12.2 of the License Agreement.
The majority opinion asserts too that “the district court [nevertheless] found that Rad Source’s breach was excused because of Nordion’s previous, first material breach thereof, thus freeing Rad Source to market the RS 3400.” Majority Opinion at 850-51. But the district court explicitly rejected that contention as follows:
I disagree with Rad Source’s contention that [Nordion] breached the License Agreement which therefore excused Rad Source from further performing its obligations under the License Agreement. In fact, I determine that the License Agreement remains operative until the expiration of the contract on its terms, i.e., until the expiration of the final patent in the year 2022.
And the district court explained as follows that Rad Source was equitably estopped from asserting an excuse for future nonperformance for similar reasons:
Rad Source is estopped from asserting, as a basis for termination or as an excuse for its own breaches of contract, that Nordion breached the License Agreement by improperly assigning or sublieensing the License Agreement to Best. Rad Source cannot claim that Nordion’s breach excused Rad Source from performing its obligations under the License Agreement based on Rad Source’s silence and inaction after being notified and/or becoming aware that Best was manufacturing and selling the Raycell.
The opinion of the district court cannot be read, as the majority opinion asserts, to find that “Rad Source did not waive its right to rely on Nordion’s first, material breach to excuse its breach of the non-compete clause (i.e., its actions in developing and marketing the RS 3400 system).” Majority Opinion at 852-53.
The majority opinion betrays its creative reconstruction of the facts when it “acknowledge[s] some inconsistent language in the district court’s opinion,” but “construed the district court’s opinion” as finding waiver only of a claim for damages, *861 not of the right to treat the agreement as excused. Id. The majority opinion also asserts that its “harmoniz[ation] [of] the two apparently inconsistent statements [in the opinion] arrive[s] at what [it] believe[s] is the true meaning of the district court’s opinion.” Id. at 853-54 n. 8. In other words, the majority opinion forgives the district court for reaching a decision inconsistent with its underlying findings by reconstructing those findings altogether. Yet the majority opinion contradicts itself in a footnote, where it acknowledges that, for the same reasons that the district court found that Rad Source waived its claim for breach of contract, “the district court also said that Nordion’s first material breaches did not excuse Rad Source from future performance under the License Agreement.” Id. at 850 n. 3. And the majority opinion then defends its reconstruction of the findings on the ground that “it is eminently fair not to subject Rad Source to damages when it opted to develop and market the RS 3400 after its chosen licensee, Nordion, breached the License Agreement and exited the business.” Id. at 853.
The majority opinion’s reconstruction of the findings about waiver is inconsistent with the notion that any waiver occurred at all. Even as it purports to affirm the factual findings by the district court that Rad Source waived its right to seek damages for any breach of the agreement by Nordion, the majority opinion asserts that “Rad Source could not be said to have acted in a manner that showed it considered Nordion’s sublicense not to be a breach.” Id. at 852. And the majority opinion asserts that “Rad Source did not act as if the transfer to Best without the required consent was valid” and that “Nor-dion has pointed to no acts of Rad Source’s that furthered the performance by Rad Source of any obligation it had under the License Agreement.” Id. at 852. But those assertions are inconsistent with the finding of the district court that Rad Source waived the breach when it learned that Nordion entered the agreement with Best in May or June 2008 and did not send a notice of default to Nordion until January 2011.
The majority opinion compounds its error when it uses its reconstructed findings to employ a more deferential standard of review of those findings. The majority opinion reviews for clear error its reconstructed findings that Rad Source “waived (and was estopped with respect to) its claim for damages against Nordion for having committed the first, material breach, but Rad Source did not waive its right to rely on Nordion’s first, material breach to excuse its breach of the non-compete clause (i.e., its actions in developing and marketing the RS 3400 system).” Id. at 852, 852-53. But the question whether the doctrine of first breach applied to bar Nordion from proving damages when Rad Source waived the breach is a question of law, which we should review de novo. See Williston on Contracts § 63:3 at 438, 447-48 (4th ed. 2002). The majority opinion argues that we should view the question as one of fact because the district court used the word “find” when it determined that Nordion could not recover damages, Majority Opinion at 853-54 n. 8, but we are not bound by that loose language to treat its legal conclusion as a finding of fact. As I have already explained, the existence of a waiver is an issue of fact, but the effect of that waiver is an issue of law.
The district court committed an error of law when it denied Nordion an opportunity to prove damages from the breach of the non-compete clause by Rad Source. The district court concluded that “neither party demonstrated that it was entitled to damages from the other as a matter of law” *862 and explained that Nordion was barred from recovering damages because “Nor-dion breached the License Agreement first by sublicensing all of its rights to Best.” See 17B C.J.S. Contracts § 752 at 199 (2011) (“The effect of a material or substantial breach of contract is, generally, to preclude the party guilty of the first such breach from recovering on the contract and to render him or her liable to the injured party for the resulting loss or injury.”). But under Florida law, “[w]here a party fails to declare a breach of contract, and continues to perform under the contract after learning of the breach, it may be deemed to have acquiesced in an alteration of the terms of the contract, thereby barring its enforcement.” See Acosta v. Dist. Bd. of Trs. of Miami-Dade Cmty. Coll., 905 So.2d 226, 228-29 (Fla.Dist.Ct.App.2005) (internal quotation marks omitted). Because Rad Source waived its right to declare a breach of contract, the district court should have concluded that Rad Source acquiesced in the alteration of the license agreement and that Nordion had standing, as a matter of law, to seek damages for the later breach of that license agreement by Rad Source.
The majority opinion’s failure to conduct this analysis is puzzling given that it treats the two other issues of standing resolved by the district court, in the section of its opinion entitled “Lack of Standing,” as issues of law. After it concluded that Nor-dion lacked standing to seek damages because it committed the first material breach of the agreement, the district court concluded that Nordion also lacked standing to seek damages because it had exited the irradiation business and that Best lacked standing to seek damages because it was not a third-party beneficiary of the license agreement. The majority opinion rejects the first determination, but agrees with the second determination. The majority opinion treats both issues as legal questions about standing as follows:
As an alternative holding to its ruling that Nordion’s first, material breach excused Rad Source’s subsequent breach of the non-compete clause, the district court also held that Nordion had no standing to claim damages for Rad Source’s breach because — even assuming a permitted sublicense to Best— Nordion had exited the irradiation business. The district court held any lost sales would belong to Best — not Nor-dion — and the district court held that Best lacked standing because it was not a third party beneficiary of the License Agreement. We disagree with the district court’s ruling that Nordion lacks standing for this reason. If the Florida Supreme Court should hold that Nor-dion’s transfer to Best was a sublieense (and thus not a first, material breach), we hold that, as a sublicensor, Nordion has standing to enforce its rights under the License Agreement. While we agree with the district court that Best is not a third party beneficiary, as subli-censee, it could sue its licensor (Nor-dion) for any damages resulting from Rad Source’s violation of the non-compete clause, and Nordion would have standing to sue Rad Source.
Majority Opinion at 854 n. 9. The majority opinion’s treatment of these latter issues about standing as pure questions of law is irreconcilable with its treatment of the decision that Nordion lacked standing because it committed the first material breach as a factual issue about waiver. I agree with the majority opinion that, as a sublicensor, Nordion remains in privity of contract with Rad Source and is entitled to enforce the license agreement and that, as a sublicensee, Best lacks standing to enforce the license agreement against Rad Source. But I cannot understand the majority opinion’s treatment of the first issue *863 of Nordion’s standing as a factual issue to be reviewed for clear error.
The majority opinion asserts that its “construction of the meaning of the district court’s opinion is a process regularly employed by appellate courts,” id. at 853-54 n. 8, but I disagree. We regularly construe legal texts, such as statutes and contracts, to determine their meaning, but we do not construe district court opinions to save them from reversal. See generally Antonin Sealia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012). We instead read opinions of district courts only for what they say. We should not rewrite an opinion of 105 pages to cure its errors of law and internal inconsistencies because we like the result. Our concern should not be with “implementing] the very clear bottom line of the district court opinion,” see Majority Opinion at 853-54 n. 8, but instead with applying the law.

Conclusion

I would not certify any questions to the Supreme Court of Florida in this appeal. I would instead affirm in part, reverse in part, and remand to give Nordion an opportunity to prove damages from the breach of the non-compete clause by Rad Source. Florida courts have uniformly applied the traditional rule that an assignment transfers all rights and duties in a contract and a sublicense transfers only a portion of those rights, and I would apply that rule to conclude that Nordion did not breach the license agreement when it entered a sublicense with Best. And even if Florida law were unclear on this point, which it is not, we could resolve this appeal based on the unchallenged findings about waiver, which establish that Nordion has a legal right to seek damages for the breach of the non-compete clause by Rad Source. Instead of following these settled legal principles, the majority opinion defends its ruling as follows based on the result: “The district court’s resolution of these issues, after an extended bench trial, reflects sound common sense, serves the interests of justice, and leaves the parties in the status quo with respect to damages.” Id. at 853-54. Because we are bound by the law, not by personal reflections of what might be equitable between two sophisticated parties to a contract, and because our review is limited by both the record and the issues raised by the parties, I respectfully dissent.