# Supreme Court of Florida

_____

No. SC13-1215
_____

**MDS (CANADA) INC., et al.,**
Appellants,

vs.

**RAD SOURCE TECHNOLOGIES, INC., etc.,**
Appellee.

[July 10, 2014]

PARIENTE, J.

In this complex commercial litigation involving a patent license agreement

that has at its core issues of Florida contract law, the certified question from the

United States Court of Appeals for the Eleventh Circuit involves whether the

licensee's transfer of its interest in the patent license agreement constituted an

assignment or a sublicense.[1]  The legal issue that is the crux of the question

presented to this Court is whether Florida law recognizes a "bright-line rule" that

distinguishes an assignment from a sublicense when a licensee transfers its entire

---

1. We have jurisdiction because the Eleventh Circuit certified a question
that is "determinative of the cause and for which there is no controlling precedent."
Art. V, § 3(b)(6), Fla. Const.

interest in a license agreement except for one day. Accordingly, to focus on this

narrow issue of Florida law, we rephrase the question certified by the Eleventh

Circuit[2] as follows:

> DOES FLORIDA RECOGNIZE A "BRIGHT-LINE RULE" TO DISTINGUISH AN ASSIGNMENT OF A LICENSE AGREEMENT FROM A SUBLICENSE?

We answer the rephrased certified question in the negative and hold that

under Florida law, whether an agreement transferring the licensee's interest in the

license agreement constitutes an assignment or a sublicense is not determined by

the mere application of a "bright-line rule." Instead, this legal determination

depends on a multitude of factors, including the language of the license agreement

and its subject matter, the substance of the interest that was actually transferred by

the licensee, and whether the licensee retained any substantial rights in the license

agreement. Further, we conclude that the analysis concerning the issue of

assignments and subleases in cases involving interests in real property, which is the

---

2. The following question was certified by the Eleventh Circuit:

> WHEN A LICENSEE ENTERS INTO A CONTRACT TO TRANSFER ALL OF ITS INTERESTS IN A LICENSE AGREEMENT FOR AN ENTIRE TERM OF A LICENSE AGREEMENT, SAVE ONE DAY, BUT REMAINS LIABLE TO THE LICENSOR UNDER THE LICENSE AGREEMENT, IS THE CONTRACT AN ASSIGNMENT OF THE LICENSE AGREEMENT, OR IS THE CONTRACT A SUBLICENSE?

MDS (Canada), Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 856 (11th Cir. 2013).

primary case law upon which the Appellants rely, does not readily translate to a transfer of rights in a patent license agreement, and that cases construing patents, such as those relied on by the federal district court, are instructive in providing guiding principles for the type of interest at the heart of this case.

In many cases, including this one, a consideration of the pertinent factors and the ultimate resolution of whether the transfer of the licensee's interest constitutes an assignment or a sublicense is a mixed question of law and fact. For this reason, we limit our discussion in this opinion to the rephrased certified question of Florida law. We decline to decide the ultimate issue regarding whether the transfer of the licensee's interest in this case was a sublicense or an assignment, leaving that legal determination for the Eleventh Circuit in this complex case involving patents that has been extensively litigated in the federal courts.

## FACTS AND PROCEDURAL HISTORY

The Eleventh Circuit described the factual scenario of this case as "complex." MDS (Canada), Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 850 (11th Cir. 2013). Because this case is before us to answer a legal question where the underlying facts have been extensively litigated in federal court, we accept as true the relevant facts presented in the detailed opinions of the Eleventh Circuit and the federal district court. As a means of providing background and context to our review of the certified question, we briefly set forth an overview of those facts.

The relevant parties are Rad Source Technologies, Nordion,[3] and Best Medical. Rad Source, a Florida corporation with its principal place of business in Georgia, is a company that specializes in research and development of irradiation technologies. Id. at 838. Irradiation refers to a process by which pathogens and microbes are eliminated from blood to reduce the risk of disease in transfusions. Id.

In the late 1990s, Rad Source became the first company to replace radioactive isotopes with X-rays as the means of irradiating blood, when it developed the RS 3000 blood irradiation device, for which Rad Source acquired three patents. Id. Rad Source manufactured and sold the RS 3000 device from 1999 until 2003, at which time it entered into a license agreement with Nordion, a Canadian company specializing in the detection, prevention, and diagnosis of disease, who then marketed the RS 3000 as the "Raycell." Id. This license agreement extended until the last of the patents expires in 2022. Id. at 838-39.

The license agreement between Rad Source and Nordion provides that no assignment of either party's rights or obligations may occur without the express

_____

3. Nordion was formerly known as MDS Nordion, which was a division of MDS (Canada), Inc. The company is referred to as "Nordion" in the Eleventh Circuit's opinion and in the briefs filed in this Court, although "MDS (Canada), Inc." is the primary name that still appears in the case caption, which we have adopted from the Eleventh Circuit.

- 4 -

written consent of the other party. Specifically, article 13.9 of the license agreement, entitled "Assignment," states as follows:

> This Agreement shall inure to the benefit of and shall be binding upon the heirs, successors and permitted assigns of the parties. Neither Nordion nor Rad Source may assign any of its rights or delegate any of its obligations under this Agreement without the express written consent of the other party, such consent not to be unreasonably withheld; provided that (i) either party may assign any of its rights or delegate any of its obligations under this Agreement, in whole or in part, to any of its Affiliates, without consent of the other party, but without relieving the delegating party from the responsibility for performance of any of such obligations and (ii) either party may assign its rights and delegate its duties and obligations (in whole and not in part) under this Agreement to an entity which acquires all, or substantially all, of its assets or business, without the consent of the other party, provided that such assignee duly and effectively assumes all of the obligations of the assigning party hereby by instrument satisfactory to the other party. Any assignment in violation of the provisions of this section shall be void.

Although the license agreement clearly prohibits the licensee, Nordion, from assigning any of its interests without the consent of the licensor, Rad Source, article 3.1 of the license agreement, entitled "Grant of License," grants Nordion an exclusive right and license that is transferable, with the right to grant sublicenses to third parties, "on such terms as are consistent with this Agreement to Use the Licensed Technology for the System (including as modified by Nordion) and for the single power supply version of the System, in the Territory."

In December 2007, Nordion requested that Rad Source consent to an assignment of the license agreement to Best, a third party that was buying

Nordion's External Beam Therapy and Self Contained Irradiator business. MDS (Canada), 720 F.3d at 839. Rad Source initially refused, but then agreed to consider the transaction and asked for further information on the sale, which it never received. Id. In a phone conference the following month, Nordion "told Rad Source that it would sublicense its rights under the contract to Best if Rad Source did not consent," but Rad Source continued to withhold its consent to the assignment. Id.

In April 2008, without the express written consent of Rad Source, Nordion and Best entered into an agreement they titled a "sublicense agreement." Under this agreement, Nordion "purported to grant Best" all of Nordion's rights under the license agreement, while Best agreed to assume and perform all of Nordion's obligations, as well as to "indemnify Nordion in the event of a suit by Rad Source alleging a breach of the License Agreement." Id.

The term of the agreement entitled a "sublicense agreement" between Nordion and Best was one day shorter than the term of Nordion's license agreement with Rad Source. Id. Further, the agreement between Nordion and Best provided that "Nordion would not be required to make any payments to Rad Source until Nordion received payment from Best." Id. Nordion also remained liable to Rad Source under the original license agreement. Id. at 856.

In addition, and as part of the asset purchase agreement between Nordion and Best, Nordion signed a non-compete agreement, "promising not to directly or indirectly manufacture, develop, market or sell technology based on blood irradiators." Id. at 839. The asset purchase agreement listed as items sold to Best "the intellectual property from Rad Source and the Raycell line." Id. at 840.

When Rad Source began marketing a new device, the RS 3400, which used different technology than the technology used in the RS 3000 device licensed to Nordion, Rad Source received a cease and desist letter from Nordion and Best, demanding that it stop doing so. Id. Rad Source responded by letter, alleging that Nordion was in breach of the license agreement. Id. Soon after, Nordion and Best filed suit, and Rad Source filed a counterclaim. Id.

After a ten-day bench trial, the United States District Court for the Southern District of Florida denied recovery of damages for either party and dismissed the case on the merits. Id. As relevant to the sole issue before this Court, the federal district court concluded that the agreement between Nordion and Best was a prohibited assignment and not a sublicense, providing the following reasoning:

> The Sublicense Agreement substantively transferred all rights held by [Nordion] in the technology licensed under the License Agreement to Best Medical and Best Theratronics. Indeed, it was originally [Nordion's] intent to completely assign and transfer any interest that [Nordion] had in the License Agreement to Best prior to Rad Source's withheld consent. The provisions of the Sublicense Agreement reveal that [Nordion] attempted to divest itself of all rights and obligations under the License Agreement and, as a practical

matter, transfer those rights and obligations to Best Medical and Best Theratronics.

I also determine that [Nordion] breached the License Agreement first by the purported Sublicense Agreement, which was in effect an assignment of Nordion's rights under the License Agreement to Best without express written consent . . . .

. . . .

"[A]n exclusive license may be tantamount to an assignment . . . if it conveys to the licensee all substantial rights to the patent at issue." Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1340 (Fed. Cir. 2006). "The initial inquiry for determining whether or not there has been a transfer by the holder of 'property consisting of all substantial rights to a patent' requires consideration of what the holder has left after the transfer. If he retains any substantial rights to the patent, then he has not transferred the property that comprises all those rights." Devlin v. Ingrum, 928 F.2d 1084, 1094 (11th Cir. 1991) (citations omitted). In order to determine whether an agreement to transfer rights to a patent amounts to an assignment or a license, courts must review the parties' intention and examine "the substance of what was granted." Aspex Eyewear, 434 F.3d at 1340 (citation omitted); see also Flexiteek Ams., Inc. v. Plasteak, Inc., 626 F. Supp. 2d 1251, 1257–58 (S.D. Fla. 2009) (holding that extrinsic evidence and surrounding circumstances considered to determine whether agreement was assignment).

. . . .

Based on the evidence presented at trial, it is apparent that the parties did not intend that the sublicensing rights—in relation to the assignment clause—permit a situation where the License Agreement could be assigned by sublicense if a party reasonabl[y] withheld consent to the assignment. Elsewise, the right of consent to assignment would effectively be written out of the License Agreement.

MDS (Canada), Inc. v. Rad Source Techs., Inc., 822 F. Supp. 2d 1263, 1307-11

(S.D. Fla. 2011).

Nordion and Best raised several issues on appeal, and the Eleventh Circuit

affirmed in part, resolved dispositive issues in favor of Rad Source, and left a

- 8 -

single dispositive issue for certification to this Court.  MDS (Canada), 720 F.3d at 856.  As related to the certified question, Nordion and Best challenged the federal district court's conclusion that Nordion's transfer of its interest in the license agreement to Best "was tantamount to an unconsented-to assignment."  Id. at 854.

The Eleventh Circuit determined that it was "uncertain" of the proper resolution of whether, under Florida law, the federal district court erred in concluding that the transfer was an assignment.  Id.  Prior to certifying the issue to this Court, however, the Eleventh Circuit set forth the arguments in favor of treating the transfer as an assignment.  See id. at 855-56.

The Eleventh Circuit explained that this Court has stated that "[t]he form of an assignment of lease is immaterial; its character in law being determined by its legal effect."  Id. at 855 (quoting C.N.H.F., Inc. v. Eagle Crest Dev. Co., 128 So. 844, 845 (Fla. 1930)).  As stated by the Eleventh Circuit, "[h]ere, the evidence shows that Nordion and Best entered into an agreement with assignment in mind and only when Rad Source refused to consent to the assignment did [Nordion and Best] decide to treat the transfer as a sublicense."  Id.

Judge Pryor dissented in part, asserting that Florida follows a "bright-line rule to distinguish an assignment from a sublease."  Id. at 857 (Pryor, J., concurring in part and dissenting in part).  The Eleventh Circuit majority, however, rejected the cases cited by Judge Pryor on the basis that those cases "are all

distinguishable and none involve a situation where the subcontracting parties sought an assignment but upon failing to garner the requisite consent, created a sublicense that retained solely a single day and no other rights." Id. at 855. According to the Eleventh Circuit, no Florida case addresses the issue of "the retention of an inconsequential term of the contract, when the sublicensing party completely divested itself of the business," but instead, other Florida cases dealing with the issue of assignments "have facts quite dissimilar to this case." Id. The Eleventh Circuit then stated that it was "uncertain how the Florida courts would interpret this situation," and certified the question to this Court. Id. at 856.[4]

## ANALYSIS

Based on the Eleventh Circuit's question, the issue that this Court must consider is whether Florida law recognizes a "bright-line rule" that distinguishes an assignment from a sublicense when a licensee transfers its entire interest in a license agreement except for one day. We begin our analysis by reviewing the Court's precedent and the relevant case law on assignments and sublicenses.

### I. The Case Law

---

4. The Eleventh Circuit explained that, "[i]f the Florida Supreme Court holds that the transfer to Best is an assignment and therefore the first, material breach [of the license agreement], then neither Nordion nor Best have any claim for damages against Rad Source," even though Rad Source subsequently breached the non-compete clause of the license agreement. Id. at 854 n.9.

- 10 -

Most of the case law concerning assignments and either subleases or sublicenses arises in the real property context. Indeed, the Appellants, Nordion and Best, rely on numerous real property cases in support of their argument that Florida recognizes a "bright-line rule" to distinguish an assignment from a sublicense. A review of Florida and out-of-state cases demonstrates, however, why precedent from the real property context is not necessarily controlling.

In C.N.H.F., 128 So. at 845, this Court long ago stated that "[a]n assignment by a lessee transfers his entire interest in the demised premises or a part thereof for the unexpired term of the original lease." Even in that context, however, the Court explained that "[t]he form of an assignment of lease is immaterial; its character in law being determined by its legal effect." Id.

Dissenting in part from the Eleventh Circuit's decision, Judge Pryor relied on the Florida Fifth District Court of Appeal's decision in Lauren Kyle Holdings, Inc. v. Heath-Peterson Construction Corp., 864 So. 2d 55 (Fla. 5th DCA 2003), another real property-related case, as support for his assertion that "Florida courts use a bright-line rule to distinguish an assignment from a sublease." MDS (Canada), 720 F.3d at 857 (Pryor, J., concurring in part and dissenting in part). In Lauren Kyle, the Fifth District addressed an agreement for the exclusive right to purchase certain real estate lots that prohibited an assignment of the agreement without the consent of the owner. 864 So. 2d at 56-57. When the purchaser

- 11 -

entered into a contract to sell the lots to a third party, without seeking the consent of the owner, the owner filed suit for breach of contract, and the trial court found that the purchaser had breached the agreement "when [it] assigned all [its] rights under [the purchase agreement] to a third party." Id. at 58.

The Fifth District reversed, stating that the purchaser did not transfer to the third party the right to purchase lots from the owner, and the third party "only obtained the right to purchase lots" from the purchaser. Id. According to the Fifth District, the purchaser "remained liable to sell lots to [the third party] even if [the owner] defaulted in its obligation to sell," and the third party "could not enforce its right to purchase lots directly against [the owner]." Id. Without addressing whether the purchaser had also transferred the exclusive right to construct homes that was part of the original agreement, the Fifth District concluded that an assignment did not occur because the exclusive right to purchase was not actually transferred and the purchaser retained the right to purchase lots from the owner in the event of a default by the third party. Id.

The Eleventh Circuit aptly articulated why the considerations in Lauren Kyle are different from those that underlie the certified question in this case, stating as follows:

> [I]n that case, there was no attempt by Sago [the purchaser], the party seeking to sublicense, to obtain consent from Peterson [the owner], the other party, before it transferred to Sunland [the third party], the purported sublicensee. Thus, there was no indication of an attempt to

- 12 -

create an assignment that was rebuffed, as there was here. The transfer in <u>Lauren Kyle</u> may well have been mere inadvertence, and certainly was not a blatant attempt to circumvent the consent requirement, as there was here. More significantly, the court in <u>Lauren Kyle</u> never mentioned the parties' intent, or whether the transfer contravened the intention of the parties. Finally, the <u>Lauren Kyle</u> court saw the transfer as contemplating the continuing involvement of Sago. <u>See Lauren Kyle</u>, 864 So. 2d at 58 ("Sago did not transfer to Sunland the right to purchase lots from Peterson; Sunland only obtained the right to purchase lots from Sago."). In other words, the parties contemplated that Sago would continue to buy lots from Peterson, and then sell the same to Sunland. By contrast, the parties to the conveyance from Nordion to Best contemplated no further involvement by Nordion; it transferred its entire interests (save only one day) and completely got out of the business. There was nothing left for Nordion to do with respect to Rad Source.

<u>MDS (Canada)</u>, 720 F.3d at 855. <u>Lauren Kyle</u>, as a case arising in the real property context with very different facts, thus does not assist our analysis of the certified question because it is completely distinguishable.

The Eleventh Circuit further noted that Judge Pryor's dissenting-in-part opinion relied primarily on cases from Florida's district courts of appeal that mostly "just cite the rule as stated in <u>Lauren Kyle</u> and have facts quite dissimilar to this case." <u>Id.</u> Importantly, other than <u>C.N.H.F.</u>, the only case from this Court cited by Judge Pryor—our decision in <u>Continental Casualty Co. v. Ryan Inc. Eastern</u>, 974 So. 2d 368 (Fla. 2008)—is equally distinguishable and unpersuasive. <u>See MDS (Canada)</u>, 720 F.3d at 857 (Pryor, J., concurring in part and dissenting in part). <u>Continental Casualty</u> was a statutory interpretation case involving principles of subrogation and equitable subrogation in the context of sureties, issues that are

- 13 -

wholly distinct from the issue embodied in the rephrased certified question. See

Continental Casualty, 974 So. 2d at 375.

Although Nordion and Best cite numerous out-of-state cases in the real

property context to argue that this Court should adopt the view that Florida

recognizes a "bright-line rule" to distinguish between an assignment and a

sublicense, this case, which arises from a dispute concerning the transfer of patent

rights, is wholly unlike a real property case in several legally significant ways.[5]

For instance, in the real estate context, a lessee typically may not grant multiple

subleases concurrently because two people cannot occupy the same premises

simultaneously. Here, on the other hand, Nordion's right to grant sublicenses to

third parties was not limited in this way, and, in fact, the parties to the original

license agreement may actually have intended exactly the opposite—that Nordion

would be permitted to sublicense its exclusive right and license to numerous

parties to facilitate and expand the marketing of Rad Source's device.

---

5. One of the primary cases cited by Nordion and Best that encapsulates their argument is a 1989 decision from the Nebraska Supreme Court. See Am. Cmty. Stores Corp. v. Newman, 441 N.W.2d 154 (Neb. 1989). That case, which cited a treatise on real property law as the authority for considering whether a transfer in land is an assignment or a sublease, involved numerous additional considerations different from those in this case, including a Nebraska policy to construe a covenant in a lease against assignment or subletting liberally in favor of the lessee, whether a right of reentry is a reversionary interest sufficient to qualify a transfer of rights under a lease agreement as a sublease rather than an assignment, and arguments concerning the exercise of a lease renewal option. See id. at 158-60.

Another difference between the transfer in this case and the transfer in a real property case is evident when considering the different motivations and concerns of the licensor. Unlike a typical landlord, Rad Source had a vested interest in the long-term commitment of its licensee, whose ability to market Rad Source's product implicated the joint reputation of both companies. As stated by the Eleventh Circuit, here, "Rad Source believed it had entered into a long-term relationship with Nordion, and had confidence in Nordion's interest in, and ability to market, the product and technology Rad Source had developed." MDS (Canada), 720 F.3d at 850. To the contrary, "Rad Source did not have the same confidence in Best," and "Nordion refused to provide information [to Rad Source] about Best and about Nordion's transaction with Best." Id. In fact, this was the reason that the federal district court found, and the Eleventh Circuit affirmed, that Rad Source's refusal to consent to an assignment was not unreasonable. See id.

As the Eleventh Circuit stated in explaining why no case—particularly no case in the real property context—directly answers the question presented, this case involves "a blatant attempt to circumvent the consent requirement" for an assignment that was included in the license agreement between Nordion and Rad Source. Id. at 855. Further, unlike Lauren Kyle, for example, "the parties to the conveyance from Nordion to Best contemplated no further involvement by Nordion." Id.

Looking to out-of-state cases for direction also is not particularly illuminating, although one case does provide some limited guidance. Specifically, the Supreme Court of Arkansas has recognized that "the question of whether an instrument is an assignment or a sublease," at least in the real property context, is in most jurisdictions "determined by principles applicable to feudal tenures." Jaber v. Miller, 239 S.W.2d 760, 761 (Ark. 1951). According to the Arkansas Supreme Court, "[t]he doctrine established in England is quite simple: If the instrument purports to transfer the lessee's estate for the entire remainder of the term it is an assignment, regardless of its form or of the parties' intention." Id. However, under this doctrine, "if the instrument purports to transfer the lessee's estate for less than the entire term—even for a day less—it is a sublease, regardless of its form or of the parties' intention." Id.

Although setting forth this historical rule, the Arkansas Supreme Court has aptly described the old English doctrine of discerning the difference between an assignment and a sublease as creating an "arbitrary distinction" and has explained that the intentions of the parties are critical in determining whether an instrument is an assignment or a sublease. Id. In doing so, the Arkansas Supreme Court has stated as follows:

> For these reasons we adopt as the rule in this State the principle that the intention of the parties is to govern in determining whether an instrument is an assignment or a sublease. . . . The duration of the primary term, as compared to the length of the sublease, may in some

instances be a factor in arriving at the parties' intention, but we do not think it should be the sole consideration.

Id. at 764.

While this Arkansas case is useful in explaining why the application of a "bright-line rule" creates an "arbitrary distinction" between an assignment and a sublicense, reviewing cases from the patent context is even more persuasive, particularly in this case that concerns a transfer of patent rights. For instance, as acknowledged by the federal district court, "[i]n order to determine whether an agreement to transfer rights to a patent amounts to an assignment or a license, courts must review the parties' intention and examine 'the substance of what was granted.' " MDS (Canada), 822 F. Supp. 2d at 1310 (quoting Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1340 (Fed. Cir. 2006) (citation omitted)).

"[A]n exclusive license may be tantamount to an assignment . . . if it conveys to the licensee all substantial rights to the patent at issue." Aspex Eyewear, 434 F.3d at 1340 (emphasis added). Indeed, the United States Supreme Court long ago recognized in the patent context that "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." Waterman v. Mackenzie, 138 U.S. 252, 256 (1891).

We embrace the reasoning of these cases, particularly as applied to the issue of a transfer of patent rights, as consistent with Florida jurisprudence. Indeed,

while we agree with the Eleventh Circuit that federal patent law is not controlling in this case, it assists in our analysis to review relevant, persuasive law on the subject matter of the dispute. As these patent cases—relied on by the federal district court in this case to conclude that the transfer from Nordion to Best was an assignment—make clear, the question of whether a particular transfer of a licensee's interest in a license agreement is an assignment or a sublicense cannot be divorced from the subject matter of the transaction and whether the agreement transferred "all substantial rights to the patent." Aspex Eyewear, 434 F.3d at 1340.

The subject matter of the transaction, as demonstrated by these patent cases, is certainly an important consideration. We turn next to explaining what other factors are also critical to the resolution of whether a particular transfer of a licensee's interest in a license agreement constitutes an assignment or a sublicense.

## II.  No "Bright-Line Rule"

We conclude that there is no "bright-line rule" of Florida law that automatically distinguishes an assignment from a sublicense. We reach this conclusion for several reasons.

First, the absence of a "bright-line rule" under Florida law is consistent with this Court's precedent. As this Court explained in C.N.H.F., "[t]he form of an assignment of lease is immaterial; its character in law being determined by its legal effect." 128 So. at 845. Although this statement does not in itself answer the

- 18 -

rephrased certified question, it does support the conclusion that this Court has never recognized a "bright-line rule," as noted by the Eleventh Circuit. See MDS (Canada), 720 F.3d at 855.

Second, a "bright-line rule" would permit the intentions of the original contracting parties to be circumvented and would thus be inconsistent with the principle of law from C.N.H.F. that the "legal effect" of the transfer is what governs the determination of whether the contract is an assignment or a sublicense. 128 So. at 845. More specifically, this case demonstrates that a review of various factors—many of which are factually dependent and involve mixed questions of law and fact—is essential in determining the "legal effect" of the transfer.

For example, as the Eleventh Circuit stated in this case, although Nordion retained a one-day reversionary interest in the license agreement, Nordion also "completely got out of the business," which meant that there "was nothing left for Nordion to do with respect to Rad Source." MDS (Canada), 720 F.3d at 855. Indeed, the entire relationship between Nordion and Rad Source was changed by Nordion's transfer to Best, as Nordion substantively transferred all of its interests—except for one day—in the license agreement to Best and retained essentially nothing. See MDS (Canada), 822 F. Supp. 2d at 1307-08. This factor would support the conclusion that the transfer was an assignment.

On the other hand, Nordion remained liable to Rad Source under the original license agreement. At the same time, Best agreed to broadly indemnify Nordion for any claim brought by Rad Source pursuant to the license agreement. Unlike the previous factor, which unequivocally weighs in favor of the transfer being deemed an assignment, the retention of liability by Nordion is a factor that could weigh in favor of the transfer being considered either an assignment or a sublicense, depending on the specific nature of the liability.

Although the Eleventh Circuit mentioned this factor in the phrasing of the question it certified to this Court, neither the federal district court nor the Eleventh Circuit provided any further insight into the issue of Nordion's continued liability to Rad Source under the license agreement. While the retention of liability certainly could be an important factor in certain circumstances, in this factual scenario, it may be inconsequential because Rad Source did not consent to an assignment of Nordion's interest, which was required by the terms of the license agreement. Therefore, in the absence of Rad Source's consent, Nordion had no legal ability to unilaterally divest itself of its liability to Rad Source under the original license agreement. See Biosynexus, Inc. v. Glaxo Grp. Ltd., 816 N.Y.S.2d 693 (N.Y. Sup. Ct. 2006) (table) (stating that continued liability was "a matter of mere form rather than substance" where the purported sublicensee fully indemnified and agreed to defend and hold harmless the licensee for any liability

- 20 -

under the original agreement, and concluding that this weighed in favor of treating the transfer as an assignment). So Nordion did the next best thing, which was as much as it legally could without Rad Source's consent, by ensuring that Best would be liable to Nordion through an indemnification clause.

While in this circumstance, the retention of liability does not weigh in favor of the agreement being deemed a sublicense, the key factor in distinguishing between an assignment and a sublicense is the intention of the parties, as set forth in the original license agreement. In accordance with general principles of contract interpretation, the actual language of the license agreement "is the best evidence of the parties' intent, and its plain meaning controls." Crawford v. Barker, 64 So. 3d 1246, 1255 (Fla. 2011) (quoting Richter v. Richter, 666 So. 2d 559, 561 (Fla. 4th DCA 1995)); see also Taylor v. Taylor, 1 So. 3d 348, 350 (Fla. 1st DCA 2009) ("Contract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract."). "To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract." Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So. 2d 195, 197 (Fla. 1992).

Here, the license agreement provided that an assignment required the consent of the licensor, while a sublicense did not. In other words, the parties to

the license agreement clearly intended that consent would be required for Nordion to assign its interest, but did not require consent for Nordion to grant a sublicense. Specifically, although the license agreement between Rad Source and Nordion permitted Nordion the right to grant sublicenses, Rad Source contends that "the parties never intended that Nordion could sublicense the entire License Agreement to a third party." A review of the actual agreement provides support for this contention.

Article 3.1 of the license agreement, entitled "Grant of License," granted to Nordion an exclusive right and license to the patented technology that was transferable, with the right to grant sublicenses to third parties, "on such terms as are consistent with this Agreement to Use the Licensed Technology for the System (including as modified by Nordion) and for the single power supply version of the System, in the Territory." After considering the voluminous testimony and arguments of the parties, the federal district court found as follows with respect to this right to grant sublicenses:

> Based on the evidence presented at trial, it is apparent that the parties did not intend that the sublicensing rights—in relation to the assignment clause—permit a situation where the License Agreement could be assigned by sublicense if a party reasonabl[y] withheld consent to the assignment. Elsewise, the right of consent to assignment would effectively be written out of the License Agreement.

MDS (Canada), 822 F. Supp. 2d at 1310-11.  Therefore, as found by the federal district court, the original contracting parties did not intend for the right to sublicense to permit the circumvention of the requirement of consent to an assignment.

Certainly, in the case of marketing a product, there would be value in allowing the licensee to sublicense its exclusive right to other entities in order to increase the sales of the product.  On the other hand, allowing the licensee to "sublicense" the entire agreement itself has different considerations and could actually thwart the original intent of the parties.  It is clear that this intent cannot be circumvented simply by labeling the transfer a "sublicense agreement."  The name of the agreement is not determinative under Florida law.

Other factors are also relevant to the analysis and help to explain why the application of a "bright-line rule" in all situations without considering the facts and circumstances of the case would lead to arbitrary results frustrating the intent of the parties to the original license agreement.  Among these factors is that the agreement between Nordion and Best apparently altered Rad Source's rights under the license agreement because it provided that Nordion was not required to make any payments to Rad Source pursuant to the license agreement before first receiving payment from Best—a factor that weighs in favor of the transfer being deemed an assignment.  See Biosynexus, 816 N.Y.S.2d 693 (concluding that a

- 23 -

third party's assumption of the licensee's royalty obligations weighed in favor of finding the transfer to be an assignment and ultimately holding that a purported sublicense agreement delegating "substantially all" of the licensee's obligations under the original agreement was in fact an unconsented-to assignment). Further, because the license agreement did not expire until the same day as the last of the patents expires in 2022, the Eleventh Circuit explained that the retention of a single day at the end of the license agreement was an "inconsequential term." MDS (Canada), 720 F.3d at 855.

Conversely, as pointed out by Judge Pryor in his dissenting-in-part opinion, Nordion "retained the right to use the licensed technology after the conclusion of the original license agreement without any further obligations to Rad Source." Id. at 858 (Pryor, J., concurring in part and dissenting in part). This alleged retention of rights, which is a mixed question of law and fact that we are not in a position to evaluate, could likewise weigh either in favor of concluding that the transfer from Nordion to Best was an assignment or a sublicense, depending on whether the right to retain use of the licensed technology was a substantial right retained by the licensee or essentially meaningless, as contended by Rad Source.

In sum, we conclude that Florida law does not recognize a "bright-line rule" to distinguish between an assignment and a sublicense because numerous other factors, which must be evaluated on a case-by-case basis, are relevant to this

- 24 -

determination. We observe that, in this case, the federal district court, applying federal cases that in this context are consistent with Florida law, concluded that the transfer from Nordion to Best was an assignment because, "[b]ased on the evidence presented at trial, it is apparent that the parties did not intend that the sublicensing rights—in relation to the assignment clause—permit a situation where the License Agreement could be assigned by sublicense if a party reasonabl[y] withheld consent to the assignment." MDS (Canada), 822 F. Supp. 2d at 1310-11. Similarly, the Eleventh Circuit, although not reaching this issue, described Nordion's retention of a one-day reversionary interest as "inconsequential." MDS (Canada), 720 F.3d at 855.

The resolution of the ultimate issue as to whether Nordion's transfer to Best constituted an assignment or a sublicense based on the factors we have set forth rests on facts in the record that we decline to evaluate in answering the certified question. Rather, we conclude that in this case, the federal courts should make that ultimate determination.[6]

## CONCLUSION

---

6. We also decline to address the issue, suggested in a footnote of the Eleventh Circuit's opinion, of whether the contract between Nordion and Best was an equitable assignment. See MDS (Canada), 720 F.3d at 856 n.10. As acknowledged by the Eleventh Circuit, no party in this case previously raised the issue of an equitable assignment, and this doctrine is, in any event, outside the scope of the certified question.

For the reasons explained in this opinion, we conclude that under Florida law, there is no "bright-line rule" that distinguishes an assignment of a license agreement from a sublicense. Instead, this case-by-case determination requires courts to consider numerous factors, including the language of the license agreement and its subject matter, the substance of the interest that was actually transferred by the licensee, and whether the licensee retained any substantial rights in the license agreement. We therefore answer the rephrased certified question in the negative and return this case to the Eleventh Circuit to apply our legal holding to the facts of this case.

It is so ordered.

LABARGA, C.J., and QUINCE, POLSTON, and PERRY, JJ., concur.
LEWIS and CANADY, JJ., concur in result.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case No. 11-15145

Charlie C.J. Lee of Moore & Lee, LLP, Ft. Lauderdale; and Robert M. Moore, Kristen A. Bennett, and Richard O. Wolf, of Moore & Lee, LLP, McLean, Virginia,

for Appellants

Andrew R. Spector of Spector Rubin, P.A., Miami, Florida; and Scott E. Taylor, Richard A. Mitchell, and Anuj Desai of Arnall Golden Gregory LLP, Atlanta, Georgia,

for Appellee